JONES *v.* STATE.

(Division B. Jan. 12, 1931.)

[131 So. 826. No. 28851.]

**L. A. Whittington,** of Natchez, for appellant.

**C. F. Cowart,** of Meadville, for appellant.

Edwin R. Holmes, Jr., Assistant Attorney-General, for the state.

Griffith, J., delivered the opinion of the court.

Appellant was convicted of the alleged forgery of a note for two hundred eight dollars and thirty-three cents, apparently signed by W. J. Coward as maker and payable to the City Bank & Trust Company of Natchez. The note is dated November 3, 1928, and was payable April 10, 1929.

It appears from the undisputed testimony that, at the time of the negotiation by appellant with the bank for the loan in question, appellant was county superintendent of education of Franklin county, and was receiving a salary of two hundred eight dollars and thirty-three cents per month. Theretofore appellant had borrowed

from this bank and had given his postdated salary requisitions as security, but the experience in the past had been that the county treasury had on some occasions been empty, thereby delaying the payment of salaries to the annoyance of the bank. Therefore when the instant loan was applied for the bank declined to make it on the sole security of the salary requisition, and required therefor an independent and additional obligation. Appellant thereupon stated to the bank that one W. J. Coward, known to the bank to be solvent and responsible, would aid him, whereupon the president of the bank made out in his own handwriting the note in question and another for the same amount and mailed them, to Mr. Coward, together with a letter, in the following words and figures: "W. J. Coward, McCall's Creek, Miss.

"My dear Mr. Coward: I am inclosing herewith two notes of $208.33 each, which Mr. Jones advises you will sign and return to us, the money to be used by Mr. Jones. He has given me transfers and assignments of his February and March salaries and Mr. Moore, Chancery Clerk, advises that he will send the checks to us. Mr. Jones tells me that he is going to call on you today. I told him very frankly that we would look to you for payment of these notes.

"Very truly yours,

"L. R. MARTIN, President."

The notes when forwarded to Mr. Coward did not contain the signature of appellant as maker, which, of course, would have been the case had it been intended that Coward was to execute them as indorser, and not as maker, and it will be observed that at the opening sentence of the bank's letter, Mr. Coward was advised that he was expected to "sign" these notes and return them directly to the bank. There is no word in the letter which carries a single thought of indorsement by Coward or by any other person. Moreover, the concluding sentence

of the letter clearly advised Mr. Coward that he alone would be looked to for the payment of the notes.

Mr. Coward received the letter and notes from the bank in due course of mail, but did not return them to the bank. Wherefore, on the following Sunday, appellant went to see Mr. Coward, and it is at this point that the dispute arises, as to 'which appellant and Coward are the only witnesses who knew, or who testified, as to the bottom facts material in this case. Coward testified that, on appellant's arrival, he told appellant that he ('Coward) would not sign the notes as maker, but would indorse them, provided appellant would procure two other indorsers, and Coward testified further that, appellant having promised to get the two other indorsers, he (Coward) then indorsed the two notes on the back thereof with an indelible pencil, and gave them to appellant. The testimony of appellant was that Mr. Coward objected to signing the notes as maker unless two indorsers werde secured, and that appellant then agreed that he would get two indorsers, whereupon Mr. Coward signed the notes as maker, using for that purpose a fountain pen, which appellant happened to have with him at the time; that the notes were thereupon delivered to appellant by Mr. Coward, and, when two indorsers had been procured with their signatures as such, the notes were delivered by appellant to the bank. The note here in issue when delivered to the bank carried the signatures of two indorsers, and it is not disputed that these two signatures are genuine, nor is it disputed that the note on which this conviction rests was one of the identical notes received by Mr. Coward from the bank and by him delivered to appellant, and by appellant to the bank.

The case therefore comes down to this: Coward admits that he executed the identical note offered in evidence, but says he indorsed it on the back with an indelible pencil, and did not sign it on the face with a pen

as it now appears, whereas appellant, the only other witness to the act, testifies that Coward signed on the face with a pen as the note now appears. If Coward indorsed on the back with an indelible pencil as he contends, and on a note which is admitted without dispute to be the identical paper, what has become of Coward's signature on the back thereof in indelible pencil? The answer is that it either was never on the back, or else had been erased because it appears in the record that the note was handed to Coward while he was on the witness stand and he was requested to look at it on the back and see if he could find his name on the back thereof, to which he answered that he could not find it. If it had never been on the back, then Coward's testimony that he indorsed on the back was necessarily untrue—he was simply mistaken; thus leaving to stand as the only remaining explanation, so far as the present record is concerned, the testimony of appellant that Coward had signed on the face as maker. The only other possible explanation, although not in this record, would be that the signature in indelible pencil on the back of the note had been erased.

Whether a signature by indelible pencil can be erased so as to leave no trace is a matter requiring expert or technical evidence; without which evidence, the court must act upon the assumption that an indelible pencil possesses the qualities which its name would imply—that its writings "cannot be removed, washed away, blotted out or effaced." There is not a word in the record which would show that there appears any sign on the back of the note that there had been any erasure, not a word that the back of the note does not appear perfectly clean and clear, and there is not a word of evidence that a signature made on the back, as Coward says his was made, could be erased, and, if so, whether without leaving some sign or trace of the evidence thereof. If proof could be made that such an erasure, without trace, was possible and that by an amateur, how is it that an ex-

perienced prosecuting attorney failed to make that proof, in a situation so vitally necessary to his case? It must follow, so far as decision here is concerned, that he could not make the proof, else he would have done so. And it follows then that the verdict is contrary to that which is demonstrated—so far as the present record is concerned —as being the true state of facts, namely, that Coward's name was never on the back of the note, but was signed, and signed by him, on the face, and that therefore there was no forgery of that name on the face, as it now appears.

It may be wondered how, in the face of these demonstrative physical facts, the jury could ever have consented to a verdict of guilty. We may therefore add that, for want of prompt, specific, and well-directed objections on the part of appellant, the course of the trial went much out of hand, and into a wide range of collateral matters, the nature of which was such that the jury may have considered that the defendant deserved conviction on general principles, even though the proof was inadequate on the exact and specific charge laid in the indictment.

Reversed and remanded.