## J. W. Sanders Cotton Mill, Inc., *v.* Moody.

(Division A. May 6, 1940. Suggestion of Error Overruled June 10, 1940.)

[195 So. 683. No. 33989.]

Cameron & Wills, of Meridian, for appellant.

288

**M. V. B. Miller,** and **Fred Ross,** both of Meridian, for appellee.

Argued orally by **Ben F. Cameron**, for appellant, and by **M. V. B. Miller**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellee, who will hereinafter be referred to as the plaintiff, brought an action against the defendant for personal injuries alleged to have been received by plaintiff while working in defendant's cotton mill. Plaintiff's work was that of attending to a machine called a spinner frame. As a part of this machine and on each side thereof, there is an aligned row of clearer boards, 15 in number, 40 inches from the floor. The clearer boards were each about 22 inches long; about 3½ inches wide, and are hollowed out on the lower side so as to be about ½ inch thick; and their weight, each, is about one pound, six ounces.

To the lower side of the clearer board is attached eight felt pads, and these pads rest lightly upon rollers, the purpose of the clearer boards and their pads being to keep the rollers clear of lint which would otherwise interfere with the functions of the rollers. In each end of the clearer board there is a longitudinal slit 1 inch long and ¼ inch wide, and on the iron frame of the machine at each end of the clearer board there is firmly fastened an iron neb or latch 7/8 of an inch wide and 3/16 of an inch thick. When the clearer board is laid at the proper place upon the rollers, the nebs or latches enter the slits at each end of the clearer board and hold the board in place upon the rollers. The length of the nebs or latches is such as to make them come out even with the top surface of the clearer board. The boards rest upon the rollers at an incline from back to front, so that without

the nebs or latches the clearer boards would not remain in proper position upon the rollers.

In the progress of the operations of the mill, lint will collect upon and around the rollers, and also upon the clearer boards. It is necessary, therefore, at intervals, to clean the clearer boards of this accumulated lint. To do this, the operator would lift the clearer board from its place and clean it either with the bare hands or with a small contrivance held in one hand called a side board; and when the clearer board is thus cleaned it would be replaced by slipping the slit at each end over the neb or latch. But another method of cleaning the clearer boards was to move the hand along the top of them without disturbing their positions, and as to the under side to run the side board along under the clearer board, without taking the clearer board entirely off of the machine, but seeing, after thus slightly lifting the clearer board, that it is settled back into position with the nebs in the slits. It was while engaged in cleaning the clearer boards by running the hand along their top surface that plaintiff alleges she was injured by one of the boards falling off upon her left foot.

It is difficult to tell in the peculiar course which the trial took, whether plaintiff was relying (1) upon an alleged dereliction of duty of the employer as regards a particular mechanical instrumentality, or whether (2) upon dereliction in respect to the general system or situation which the employer is alleged to have allowed to prevail, and whether out of this, the negligence charged is to be found in the failure to use reasonable care to furnish a reasonably safe place to work. If we should look to the testimony of plaintiff herself, who alone witnessed the accident, we would conclude that the theory first stated was the one relied on; but when all the testimony introduced by plaintiff and her cross-examinations of defendant's witnesses, and the instruction obtained by her on the issue of liability are considered, it would seem that the second theory is made the chief

reliance for the maintenance of plaintiff's case. The declaration is in rather general terms, and no bill of particulars was requested. We will, therefore, consider each of the two theories, and, first, whether there was sufficient proof of a negligent disorder in the particular machine.

To paraphrase what was said in Dr. Pepper Bottling Co. v. Gordy, 174 Miss. 392, 400, 164 So. 236: The burden of proof was on plaintiff to prove that her injury was proximately caused by a defect in the machine, the nature of the defect, and that it was such as might have been ascertained by the exercise of reasonable care on the part of the master. And the opinion shows, further, that what is meant by the nature of the defect is the particular or particulars in point of fact which render the instrumentality defective, else the testimony in respect thereto would degenerate into mere conclusion or into conjecture.

Plaintiff in this case, so far as her own testimony is concerned, definitely committed herself to the causal defect as being in the neb or latch at the north end of the clearer board, and that this defect was that the neb at that point had become worn down to such an extent as to make it too short to hold the clearer board while the process of cleaning it, by running the hand over the top, was in progress. She says that when she ran her hand along the top surface of the clearer board and reached the north end thereof, that end of the board was thereby depressed which caused the other or south end to kick up and come off the neb at the south end, and the neb at the north being too short, acting alone, to hold the board, it fell off the machine.

A clearer board and a neb taken from the machine at the precise place where plaintiff says she was injured was introduced by defendant as a part of the record. They have been sent here and we have carefully examined them in every detail. The neb is of tough iron. Neither it nor the clearer board constituted moving parts; nothing moved against the neb, and it was completely protected

from wear by the clearer board. As a matter of physical demonstration, the neb would not be worn down even a tenth of an inch in a hunderd years; and if the jury believed the statement that the neb was worn down, it was because the jurors did not examine the exhibits.

If the neb was short it was broken, not worn; and plaintiff did say near the close of her extended testimony that the neb was broken off. If it was intended to say by this that the neb was entirely broken off it would prove too much, for had that been the case, then, under the inevitable laws of gravitation, together with the vibrations of the machine, although these were perhaps slight, the clearer board would have fallen off entirely before she reached it in cleaning it, or else the north end of the clearer board would have sagged out of alignment; and in the latter situation the question might enter into the case whether plaintiff had not convicted herself of adopting an obviously unsafe way in cleaning the board by running her hand over it in the sagged position when there was a safe way readily open to her, namely, to lift the clearer board from its position to clean it as other operators did in this process of cleaning the boards.

But it is, of course, admitted that before attempting to clean it, the clearer board had not fallen off; and plaintiff did not anywhere, in the whole course of her examination, intimate that the clearer board was out of alignment, and her entire testimony tends to the contrary. That being the case, if the neb was broken there must have been still enough of it left to reach into the lower part on the slit in the clearer board so as to hold the board in aligned position when it was untouched. This, however, introduces two other difficulties into the theory of a short neb, not to mention others: First, the neb being long enough to reach into the lower part of the slit in the clearer board, it would reach considerably further into the slit when the board was depressed at that end sufficiently to throw it off the neb at the other end, and this raises a question whether this increased hold of the short

neb would not then be sufficient, when considered in connection with what has previously been pointed out, to keep the board from entirely falling off. But if this may be satisfactorily answered, there appears, in the second place, a far more serious question in this, that a neb could not, within the range of probabilities, have been broken off within that part of the slit which surrounds the neb, for that part of the neb would be completely protected from breakage by the clearer board itself.

The difficulties above pointed out, and others which we will not pause to discuss, are such as to make it doubtful that the verdict was rendered on a sustained conviction that the particular unit of the machine had been shown by sufficient, dependable, cogent proof to be out of repair in the particular manner asserted by plaintiff in her individual testimony; and this brings us necessarily to the instruction, and the only instruction, on liability obtained by appellee, and to the wide range which the evidence, other than by plaintiff herself, was allowed to take. The instruction is as follows:

''The court instructs the jury for the plaintiff that it became and was the duty of the master to exercise reasonable care to make the place where plaintiff was required to work reasonably safe, and if you believe from a preponderance of the evidence that the defendant failed to exercise such care, in that the machinery around which plaintiff was required to work was defective, in that the 'clearer boards' were unsuitable and that the latches fastening same were worn and defective so that the 'clearer board' that was alleged to have hurt plaintiff was likely to fall in the usual and ordinary operation as a result of such conditions, if any, and at a time when the plaintiff was using due care for her safety, and that the defendant knew of such conditions, or by the exercise of reasonable care could have known of such conditions in time to have remedied them by using reasonable care, if any such conditions there were, and that such, if any, was negligence on the part of the defendant, and that such

negligence, if any there was, proximately caused plaintiff's injury, if any, it will be your duty to find for the plaintiff.''

This instruction, as will be seen, veers away from a specific or particular defect in a particular, independent unit in a single machine, but proceeds in the plural as against the general situation and the conditions in general around which plaintiff was working, and invites the placing of the blame upon the more general conception of a failure to use reasonable care to furnish a safe place to work,—it presents the second theory which was mentioned at the opening of this opinion.

The rule is often stated in the same sentence and as of the same group obligation that it is the duty of the master to use reasonable care to furnish the servant with a reasonably safe place in which to work and reasonably safe tools or instrumentalities with which to work, and confusion has arisen in that, when an injury occurs because of a negligent defect in an instrumentality, it is asserted and contended that there has been a ˙failure to furnish a safe place to work, simply because the injury occurs where the servant is at work. But every injury happens at some place; hence it is not to be said that because thereof the place was unsafe. The place of work is the location, the situs, the premises, and if an injury occur there by force of an independent defect in a machine which is being used at the place, the wrong must be laid upon and proved against the machine, and is not to be ascribed to the more general conception of a safe place to work. This is sufficiently well illustrated in the opinion in Fink v. Slade, 66 App. Div. 105, 72 N. Y. S. 821, 824. From that case we take the following quotation: '' 'In one sense, the place of an engineer's work is on his locomotive, but a defect in that is a defect in the machine which the master has supplied, and not in the place of labor which he has furnished.' This applies to all the employes engaged in running a railway train. Their place is on the train, but, if the train is thrown from the

track by reason of a defect in the cars, that defect, and not the want of a safe place to work, is the ground of the master's liability.'' There are instructive illustrations found in the cases where an injury is caused by a fellow servant and it has been sought to avoid the application of the fellow-servant doctrine by resort to the contention that the master has failed to furnish a safe place to work, as, for instance, Hermann v. Port Blakely Mill Co., (D. C.), 71 F. 853. The case here before us furnishes another apt illustration of the need of keeping clearly in mind the material distinction between a safe instrumentality and a safe place to work.

So here, it is not that the servant was injured at the place where she was at work that forms any basis of liability, but the liability, if any, must be laid upon and proved against the machine from which the injurious agency is alleged to have been thrown; and, as already said, the proof in that respect must address itself to the particular or particulars in point of fact which render the instrumentality defective, and when that defect is in an independent unit in the machine in question and when the injurious unit acted independently of the other units of the machine and of all the other machines thereabout, as was the case here, the defect must be proved to have existed in that unit, not that there were defects in some other units either of the same machine or in other machines, although of like kind of machines. It is no more permissible to convict an employer in damages on proof of derelictions in general than it is to convict of crime on proof that the defendant is a criminal in his general character.

It was error, therefore, to give, in the case here before us, an instruction to the jury on the theory of a safe place to work,—an error which ties itself into this record in such a way that its review is inescapable. Lawyers have been confused on the question as to the difference between a safe instrumentality and a safe place to work; and it may not be said that jurors would not be

confused and misled in the same respect. It was error to speak in the instruction in general terms of the machinery around which, and in the plural of the conditions under which, plaintiff was required to work, and of clearer boards in the plural as being unsuitable, and in the plural of the latches fastening the same. The primary issue here was as concerns this particular clearer board and this particular latch which formed a distinct and independent unit, and we repeat that a verdict may not be founded on the fact, if a fact, that other clearer boards were unsuitable, or other latches worn or defective. And as to the clearer board which is alleged to have fallen, appellant calls attention to the fact, which we have verified by the record, that there is not a word of evidence that this particular clearer board was unsuitable or in any way out of order or repair; so that if it be argued that the particular clearer board only was involved in the instruction, then it was erroneous under the established rule that an instruction which has no evidence whatever to sustain it is erroneous. Williams v. City of Gulfport, 163 Miss. 334, 141 So. 288, and cases therein cited.

And if it be said that the instruction can be read in the alternative so as thereby to leave out of consideration any unsuitability in the clearer board and read it as referring solely to the particular neb or latch, there is authority to the effect that where an instruction is framed in the alternative and there is no evidence in support of one of them, the entire instruction is erroneous. Branson on Instructions (2 Ed.), p. 163, citing Williams v. McConaughey, 58 Neb. 656, 79 N. W. 549.

We do not decide the precise point last mentioned. We proceed, in spite of it, to a further discussion of the propriety of the instruction, taken as a whole, when applied to this record as the record now stands before us, and to some review of the wide range which the testimony, both on direct and cross-examination, was permitted to take.

Over repeated objections by appellant, the court permitted appellee to impress the jury with witnesses produced by her who affirmed that, going back over a period of more than three years and to all parts of the mill, where these machines in a large number were in operation, clearer boards were often split or had holes bored in them; that some of them were homemade out of improper material; and that the nebs or latches were often broken off and missing in various parts of the mill, so that the clearer boards would fall off and thus be around the feet of the workers; that these would not be remedied or repaired and that those whose duty it was to repair would often fail to do and would give as an excuse that there was nothing at hand for the making of the repairs. In other words, that because some, or even many clearer boards, separate and independent of each other, throughout a considerable length of time and throughout several parts of the mill, were defective or unsuitable, or for the same length of time nebs or latches were broken off or missing, then the particular board in this case at this particular time was unsuitable and this particular latch was at this particular time in some way defective. If such evidence were probative, then it could be said to be proof enough, when a person is in a town where there are a number of merchants and meets a man on the street, that the man so met is a merchant. All the above was denied by every witness for defendant, but in view of the verdict these denials disappear.

Appellee seeks to defend this testimony on the strength of such cases as Crawford v. City of Meridian, (Miss.), 154 So. 888. In the cited case it was held that evidence of several previous accidents at the same point in the street is admissible. But there is no authority in that case that previous accidents happening throughout the municipality and at various points therein would be admissible. A case more nearly in point with what we have here is Wilson & Co. v. Holmes, 180 Miss. 361, 368, 177 So. 24; but we cannot prolong discussion of this question

in an opinion already lengthy, and we, therefore, say here only that none of our cases, where the point is made, permit testimony to go so far into collaterals as was done in this case. Whatever may be the specific limitations as regards relevancy, there must always be the ultimate limitation that the testimony shall never run to such length in such matters as to raise a doubt whether the case was decided by the jury on the real issue or whether on the collaterals.

In view of the general attitude of this record there are several other instances which occurred in the taking of the testimony which cannot escape the attention of an examiner who would responsibly grasp its import, and wherein collateral matters were unduly pursued. For instance, in the cross-examination of the witness, Anders, the spinner foreman of the mill. It may be that the methods of this mill in that it had no concern whatever as to the welfare or safety of its workers; that it engaged in the indirect subornation of witnesses; that its harsh course of work might be described as the stretch-out system, about which this witness was taken so severely in hand on cross-examination, may, if true, have made this concern an undesirable member of the community; but there is too much danger in allowing examinations to go to such lengths that the particular merits may be obscured and that passion may be aroused by these extraneous considerations. As already otherwise stated, and under whatever principle it may be that evidence is adducible, and even on cross-examination touching the bias or interest of witnesses, it should never be permitted to proceed so far into collaterals as to raise a doubt whether the verdict is upon the real issues or whether upon general principles that the plaintiff or the defendant, one or the other, is by his general character or conduct deserving of a verdict against him, be the precise facts what they may. The attitude of this Court on this subject is illustrated by what was said in Jones v. State, 159 Miss. 119, 131 So. 826.

And what was said in the case last cited bears upon the contention made here that the defendant did not at all times and in every place object to the irrelevant testimony. Defendant shows that it made 138 separate objections, nearly all of which were overruled, whereas most of them were so obviously well taken that it is difficult to see why they were not unhesitatingly sustained. The rules and practice on this subject are succinctly set forth in a handbook on procedure in general use in this State, Griffith Miss. Chan. Prac. Secs. 579 and 580, and need not be restated here.

Upon the whole, it is our conclusion that the case should be retried upon clear-cut issues, upon instructions which lead to these issues, and wherein collateral issues shall be properly confined, and this by both sides to the case,—appellant being not entirely without fault on this score in this record. We cannot deal with everything covered in the more than 300 pages of the briefs in this case, but must in a few words refer to four other matters: (1) The release pleaded cannot be sustained and ought to be omitted in a new trial. (2) The contention that the neb and clearer board were simple devices within the simple tool doctrine is not well founded. (3) The defense of assumption of risk has no place in the case, and the record and the testimony should not be cluttered up by it. (4) The chiropodist was competent as a witness, and the fact that some of his testimony was extravagant does not serve to take him off the stand altogether.

Reversed and remanded.