## WARD *v.* STATE.

(In Banc. April 12, 1948.)

[34 So. (2d) 720. No. 36534.]

**M. V. B. Miller,** of Meridian, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **M. V. B. Miller**, for appellant.

**L. A. Smith, Sr.**, delivered the opinion of the court.

The grand jury of Kemper County indicted appellant for the murder of M. T. Hoyt, a taxi driver. He was convicted, but the jury disagreed as to the punishment, whereupon he was sentenced to the penitentiary for life. A motion for a new trial was overruled, and he appealed. Here, he assigns as errors that the trial court overruled his motion for a new trial, a ground of which was: "the verdict is contrary to the overwhelming weight of evidence"; that evidence was admitted over his objections, prejudicial to him; and a certain instruction was wrong.

The homicide was the culmination of a ride by appellant in the taxicab of deceased who drove it, and wherein appellant and another white man and two Negro women were passengers. Their destination was a store at Pine Ridge, at which whiskey was purchased. On arrival there, two Negro men with whom the women had "dates" failed to appear, and one of the women, Clotee Wilson, then had deceased drive her to her father's home, some miles away. The same group made that trip, too. The first quarrel between appellant and deceased started there, during which appellant slapped deceased. It involved appellant's obligation for taxi fare. However, the same parties,

except Clotee Wilson, all returned to the same roadhouse called "New Store" at Pine Ridge. They were drinking, and appellant was apparently drunk. After reaching and stopping at "New Store," more whiskey was imbibed and the quarrel intensified. Deceased threatened to kill appellant, went into the store, and procured the proprietor's shotgun for the purpose, but was disarmed by the proprietor, who recovered the weapon from him. Apparently a reconciliation was had. Nevertheless, deceased beat appellant somewhat severely there, bloodying his nose, and hurting him otherwise. In the course of the difficulty, appellant made a threat against deceased that "I will kill you before dinner." The time was then between midnight and daybreak. After the seeming renewal of friendly relations, all parties, except Clotee Wilson, departed on the return journey to DeKalb, appellant having failed to get a check cashed, to obtain funds for more whiskey.

The other white man, however, quit them when he reached his parked truck on the highway. This left deceased, appellant, and the remaining Negro woman, Matilda Williams, as the only occupants of the taxicab. At a point several miles before reaching appellant's home, this woman testified, when she and appellant were on the back seat together, he lowered his voice and told her to "get out of the car when he got to Pleasant Ridge Church that he was going to kill Mr. Hoyt," the deceased. This she did, and then Hoyt and appellant were alone in the cab for the rest of the trip to appellant's home. Appellant had no gun with him, but had a shotgun at his home.

The home of appellant was a short distance off the highway, and when they reached the driveway thereto he told deceased, "It is not worthwhile for you to drive up there with me, waking them up they are asleep," according to his own uncorroborated testimony. This was about dawn or shortly after. To which, he testified, deceased replied, "because we had a racket down there you think I am scared to drive in there," and perversely drove the car

right up to the end of the porch. Whereupon, as appellant was preparing to alight, he was seized and beaten by deceased, bloodied and his shirt torn, but he escaped the clutches of deceased, went into the house, procured his shotgun and killed deceased, who was then standing in the car door, having threatened to follow him into the house. None of this is corroborated by any witness. Appellant would have had the jury believe the deceased went there in order to kill him, although permitting appellant to go into the house, arm himself, come back and shoot him to death. The waiting, by deceased, the evidence showing that he did not follow appellant around or into the house, was probably for appellant to get and pay him the agreed taxi price. This hypothesis is more reasonable than appellant's incredible explanation, when it is remembered appellant had no funds when leaving "New Store," and had agreed to pay a certain amount as taxi fare, to deceased. Furthermore, this view is strengthened by the position of the dead body when the sheriff came to investigate the matter. The jury was not convinced by appellant's narration.

It will be remembered here that up until this scene at appellant's home, no witness had testified that deceased had any sort of a gun, either on his person or in the car, and the parties had been together for several hours. Furthermore, the deceased had to obtain the shotgun of the proprietor at "New Store," when he and appellant had the fight there, which gun was there taken away from deceased. It is manifest that he had no gun, therefore, when he was shot. Appellant was bound to have known that fact. Notwithstanding, appellant swore on the witness stand that this is what took place at the killing: "I said, 'I done told you one time to leave so I ain't going to fight. I am not able.'" "He said 'You son of a bitch, you are the one going to die.' He raised up his gun like that." And then appellant said he shot and killed deceased. Yet, a short time later, when asked why he slew Hoyt, the deceased, appellant answered, "Because

he said he was going to kill me and was reaching for I thought a gun." These two contradictory statements, matched as they are by others equally incongruous in appellant's testimony, demonstrate its inherent weakness and unreliability. As stated, appellant and deceased were the only eyewitnesses to the slaying. The evidence was conflicting as to whether appellant was actually bloodied at "New Store," or as he claimed, at his own home. We cannot say the verdict was against the overwhelming weight of the evidence, it was amply supported by it in our judgment. We have examined Anderson v. State, 199 Miss. 885, 25 So. (2d) 474; Bangren v. State, 196 Miss. 887, 17 So. (2d) 599, and the other cases cited by appellant, but do not find them in point here.

Appellent also assigns as error the admission, over his objection, of testimony by a Negro, Harvey, claiming to have been a bartender at "New Store," that he had seen appellant there, before the trip involvd here, with the Negro woman, Matilda Williams. Objection was made that this evidence was highly prejudicial to appellant, and caused him to be tried for two offenses simultaneously. He refers us to Coleman v. State, 198 Miss. 519, 23 So. (2d) 404; Collier v. State, 106 Miss. 613, 64 So. 373; Jones v. State, 159 Miss. 119, 131 So. 826, and others. We cannot agree that this testimony caused appellant to have to submit to trial for adultry, as argued, at the time he was being tried for murder. There was no element of adultry involved in the testimony, unless conjecture from suspicion be evidence, and we deem it not to be. However, it was capable of arousing prejudice against appellant, but since he was present with the Negro woman, and drinking with her on the night of the homicide, it was cumulative at most. He could not, and did not, deny being with her on the trip under discussion, and such association then was a fact in evidence before the jury at the trial. While we thing the testimony was irrelevant and incompetent, we do

not think it, under the circumstances of this case reversible error.

We find no error in the instructions. Even if the particular one argued by appellant were susceptable of the construction he put upon it, it was remedied by other instructions granted him, clarifying its meaning. In our judgment, however, the challenged instruction preserved to appellant the right which appellant argues it denied him, that is, the right to act upon reasonable appearance of imminent danger of great bodily harm or loss of life.

In our judgment, the verdict of the jury was amply justified by the evidence, and we are constrained to affirm the judgment of the circuit court.

Affirmed.