REX NITROGEN & GAS CO. *v.* HILL.

Feb. 25, 1952.

No. 38223 (57 So. (2d) 173)

**Forrest G. Cooper**, for appellant.

**Smith & Jones**, for appellee.

**Arrington, J.**

Mrs. Jeanette P. Hill, appellee and plaintiff in the court below, sued the appellant, Rex Nitrogen and Gas Company, in the Circuit Court of Washington County and obtained a judgment in the amount of $2,416.66, from which judgment the appellant appeals to this Court.

The facts briefly stated are as follows: Mrs. Hill was the owner of a farm and mercantile business known as the "Triumph Farms" at Merigold, Mississippi. On July 26, 1948, the appellee entered into a contract with the appellant, Rex Nitrogen and Gas Company, for the purchase of 20,000 gallons of anhydrous ammonia (liquid fertilizer, same to be delivered at Leland, at the plant location, Rexburg, Miss.). Under the terms of the contract, the appellee was required to and did deposit one-third of the contract price, which was $2,000, the balance to become due February 1, 1949. On December 9, 1948, the appellant, by its president, Mr. J. A. Finklea, advised the appellee that the manufacturers of anhydrous ammonia had increased their price in the amount of 3.75 cents per gallon, which increase amounted to $15 per ton (400 gallons). In this letter it was stated "if you are unwilling to pay this increase, you may cancel your order and we will refund your deposit". Upon receipt of this letter, Mr. Hill, the husband of appellee and the manager of the "Triumph Farms", called Mr. Finklea, president of appellant company, over the telephone and told him that the price was too high but that if he would ship the

20,000 gallons of ammonia to Merigold in carload lots, he would pay the increase. According to Mr. Hill's testimony, Mr. Finklea agreed to do this, and the appellee paid one-third of the increase in price of the ammonia, which was an additional sum of $416.66, thus making the total amount deposited by the appellee the sum of $2,416.66. The appellant did not ship the ammonia to Merigold and denied that he was under any obligation to do so as no subsequent oral agreement was made with Hill and that under the original written contract, it was the duty of the appellee to obtain the ammonia at the Rexburg plant. The appellee, not getting any of the fertilizer, called on the appellant to refund her deposit of $2,416.66. This demand was made prior to November 1, 1949. On October 26, 1949, the appellant wrote the appellee a letter advising that it had sold its plant and that since the appellee had not called for the ammonia under the original contract, he was entitled to a refund on his deposit, as it was entitled to its profit on the fertilizer, together with other expenses incurred therein, and tendered to the appellee the sum of $946.66, which was the balance after deducting its profit and expense.

The appellant assigns as error the granting of the following instruction to the appellee: "The court further charges the jury for the plaintiff that if you believe from a preponderance of the evidence in this case that subsequent to the making of the written contract introduced in evidence in this case and made by and between the parties hereto on the 26th day of June, 1948, said parties by oral agreement modified said original contract by which said modification the defendant agreed that the anhydrous ammonia which was purchased from it by plaintiff was to be shipped in car lots to plaintiff directly from the factory to her place of business at Merigold, Mississippi, and further agreed that if for any reason it should be found to be impracticable for said shipments to be made directly to plaintiff from the factory, then defendant would so notify plaintiff and that plaintiff

would, in such event, be privileged to obtain said anhydrous ammonia from defendant's plant at Leland, Mississippi, when notified by defendant so to do; and that thereafter no anhydrous ammonia was ever delivered to plaintiff by defendant or by the factory with whom defendant dealt, in car lots or otherwise, and defendant never thereafter advised plaintiff that such delivery would not be made, nor did it call upon plaintiff to obtain said anhydrous ammonia from its plant at Leland, Mississippi, nor give to plaintiff any other notice in reference thereto; and that thereafter plaintiff called upon defendant to refund to her the sum of $2,416.66, which she had deposited with it in partial payment for the purchase of said anhydrous ammonia and that defendant declined and refused to pay same over to plaintiff, then defendant became, was and is liable to plaintiff in said principal sum of $2,416.66 plus interest since November 1, 1949, and it is your sworn duty to so find, and the form of your verdict may be: 'We, the jury, find for the plaintiff in the sum of $2416.66 plus interest since Nov. 1, 1949, at the rate of 6% per annum.' "

The appellant's objection to this instruction is that it is not supported by the evidence. Upon a careful examination of this record we find that there is no testimony or other evidence in the record to support this part of the instruction: "* * and further agreed that if for any reason it should be found to be impracticable for said shipments to be made directly to plaintiff from the factory, then defendant would so notify plaintiff and that plaintiff would, in such event, be privileged to obtain said anhydrous ammonia from defendant's plant at Leland, Mississippi, when notified by defendant so to do * * *" This Court has held that it is error to grant an instruction which is not based upon the evidence. Williams v. City of Gulfport, 163 Miss. 334, 141 So. 288; Poteete v. City of Water Valley, 207 Miss. 173, 43 So. (2d) 112; Gulf Mobile & O. R. R. Co. v. Smith, 210 Miss. 768, 50 So. (2d) 898. In J. W. Sanders Cotton Mill, Inc., v.

Moody, 189 Miss. 284, 195 So. 683, 684, Syllabus 8, the Court held: ''Where an instruction is framed in the alternative and there is no evidence in support of one of alternatives, the entire instruction is erroneous.''

■ ■ The appellee argues that if there is error in this record it is harmless and the judgment should be affirmed because the verdict is manifestly right, citing the cases of Hale v. Hinkle Mercantile Co., 159 Miss. 796, 132 So. 751; Sikes v. Thomas, 192 Miss. 647, 7 So (2d) 527; and J. J. Newman Lumber Co. v. Cameron, 179 Miss. 217, 174 So. 571. We do not agree with this contention, as the cases cited are not applicable to the instant case. The evidence in this case as to the subsequent oral agreement is in direct conflict and is sufficient to have supported a contrary verdict, and we are unable to say that the granting of this instruction did not influence the jury in its verdict. We are, therefore, of the opinion that this instruction was prejudicial and constitutes reversible error, and that the judgment should be reversed and remanded for another trial.

Reversed and remanded.

Alexander, Hall, Lee and Kyle, JJ., concur.

ON SUGGESTION OF ERROR.

Mar. 17, 1952 (57 So. (2d) 569).

Alexander, J.

Appellee insists that, regardless of any error in the instruction set out in our former opinion, it is not controlling for the reason that appellant testified that the market value of the product was, at the time of its breach in July 1949, $145 per ton, which was the price appellee had agreed to pay, and that therefore appellant sustained no loss.

The argument is that, assuming a breach of the contract, it was the duty of appellant, upon breach to dispose of the anhydrous ammonia at the market price, and

that, had it done so, it would have suffered no loss of profits and hence is not entitled to any charge against the deposit made with it by appellee.

The testimony on this point is disadvantageous to appellant which offered proof to the effect that, as stated above, the market price at the time of the breach was exactly what, under the theory most favorable to appellant, the appellee was obligated to pay. This view is supported by an agreement of counsel that in July 1949 appellant sold 57,722 gallons of the product at $145 per ton, and in August 10,598 gallons, and as late as September, 7,220 gallons, both at that price.

The issue, however, for the reasons stated in our former opinion, remains open as to whether under a subsequent oral contract, if such there was, it was the duty of Rex Nitrogen Company to make shipments to Merigold, as well as the alleged breach of the original or subsequent contract. Since there was no request by the plaintiff, appellee, for a directed verdict, the duty of the appellant to dispose, with reasonable promptness, of the amount allegedly purchased by appellee, and its right to take any credit to itself for loss of profits as a charge against the deposit, likewise is still in issue.

Appellant in its testimony disclaimed any right to charge the deposit with such items as storage or other overhead expense and rested his counterclaim solely upon an alleged loss of profits.

If the existence and terms of the original and subsequent contracts were made immaterial by a conclusive showing of a violation of a duty on the part of appellant to make reasonable and timely disposal of the products without loss of profits, a serious question would confront appellant. However, we need not, and do not, pass upon this question since the cause was not properly submitted in the instruction and the duty and ability of appellant to save itself from loss is not clearly shown.

Suggestion of error overruled.

**Hall, Lee, Kyle** and **Arrington, JJ.,** concur.