## RIVERS, a Minor *v.* TURNER.

No. 39527          March 28, 1955          78 So. 2d 903

*M. V. B. Miller, Gerald Adams,* Meridian; *Frank Clark,* Waynesboro, for appellant.

*John W. Backstrom,* Leakesville; *M. M. Roberts,* Hattiesburg, for appellee.

KYLE, J.

This case is before us on appeal by J. D. Rivers, a minor 15 years of age, plaintiff in the court below, from a judgment of the Circuit Court of Greene County rendered in favor of W. J. Turner, Jr., defendant in the court below, in an action for damages for personal injuries sustained by the plaintiff as a result of an automobile accident which occurred on U. S. Highway No. 45, about two miles south of the Town of Waynesboro.

The record shows that the accident occurred about 10 o'clock at night on September 11, 1953, at a point on the highway about 200 yards south of the drive-in theater where the appellant worked. The appellant was riding a

bicycle southwardly along the right hand traffic lane of the highway, when the bicycle was struck from behind by the appellee's automobile, which was a 1953-model Ford. The appellant was thrown forward on to the pavement and sustained serious bodily injuries. The bicycle which he was riding had been purchased by him from the Western Auto Company at Waynesboro about three weeks before the accident occurred; and according to the testimony of the appellant and his witnesses, the bicycle was equipped with a proper headlight and a rear red reflector which could be seen for a distance of several hundred feet by the driver of an approaching vehicle. The appellant's sister was riding on the bicycle with him at the time of the accident, and she too was thrown from the bicycle and sustained personal injuries.

The plaintiff alleged in his declaration that his injuries were proximately caused by the defendant's negligence in the operation of his automobile, in that the defendant failed to keep a proper lookout for other persons along the highway, and in that the defendant failed to keep his car under proper control, or to warn the plaintiff of his approach, and in that the defendant was driving his car at an excessive rate of speed. The defendant in his answer denied each of the above mentioned acts of negligence; and the defendant pleaded as an affirmative defense that the plaintiff's injuries were due to his own failure to keep a proper lookout for automobiles approaching from the rear and to keep his bicycle under proper control; and that the plaintiff carelessly and negligently left a place of safety on the westerly shoulder of the highway and darted into the lane of travel of the defendant's automobile, thereby creating an emergency which was the proximate cause of the accident.

The appellee, testifying as an adverse witness for the plaintiff, stated that he and John Neal Kittrell had attended a football game at Waynesboro and were returning to their home at Leakesville at the time of the ac-

cident. Three other boys were riding on the back seat of the car. When the appellee first saw the plaintiff and his sister on the bicycle, they were about 50 feet in front of him. The appellee was driving at a rate of speed of 45 or 50 miles an hour. He did not have time to blow his horn after he saw the plaintiff on the highway. He applied his brakes immediately but was unable to bring his car to a stop before striking the bicycle. He could not cut his car to the right or to the left, for the reason that there were pedestrians on the right shoulder of the highway and another car was approaching from the south. The appellee stated that his brakes and the lights on his car were in good condition. He did not see any lights on the bicycle.

The appellant testified that he worked at night at the drive-in theater; that he had quit work about 10 o'clock and was riding southwardly on the black top pavement toward his home, at a rate of speed of 8 or 10 miles an hour, when he was struck by the automobile approaching from the rear. The appellant stated that no horn was blown, and that he did not know that the automobile was approaching until he heard the brakes "squealing." He was rendered unconscious by the blow that he received when the automobile struck his bicycle and he was thrown to the pavement. He was carried to the hospital at Waynesboro and remained there eleven days. His leg was put in a cast, and he was unable to work for several weeks after being discharged from the hospital. The appellant stated that the headlight on the bicycle was burning, and the red reflector on the rear end was in good condition.

R. C. Austin, a state highway patrolman, testified that he arrived at the scene of the accident almost immediately after the accident occurred. The appellant was lying on the pavement 10 or 15 feet in front of the appellee's car, the bicycle was off in the ditch. The appellant was partly conscious and appeared to be suffering. He was carried to the Wayne General Hospital

soon after the patrolman arrived. The patrolman asked who was the driver of the car, and the appellee stated that he was. The patrolman then asked him how the accident happened, and the appellee stated that he hit the bicycle. The appellee said, ''I am sorry I hit it, but I just didn't see it until I was right on it.'' The patrolman then asked the appellee how fast he was going, and the appellee said, ''Well, I don't think I was going over 60.'' The patrolman testified that there were skidmarks for a distance of 88 feet on the pavement. The lights on the bicycle were knocked out, and the red reflector was broken in pieces and was scattered on the pavement. The patrolman testified that a red reflector on a bicycle could be seen a long distance, 500 feet or more — ''As long as your headlights shine on that reflector, you can see it.'' The patrolman stated that the Ford automobile had proper lights on it, which could be seen for a distance of several hundred feet. He stated that the highway running north from the scene of the accident was straight for a distance of a little over a mile, that the accident occurred about 2 miles south of Waynesboro, and a little over 200 yards south of the drive-in theater. There were a good many people and a lot of automobiles on the highway that night. In answer to a question propounded to him on cross-examination by the defendant's attorney, the patrolman stated that an automobile traveling at the rate of 45 miles an hour would not skid 88 feet. On redirect examination by the plaintiff's attorney he stated that in his judgment the driver of the automobile was going at least 70 miles an hour.

Harry Byrd, Wayne Williams, Billy Joe Williams and John Neal Kittrell, who were riding in the appellee's car at the time of the accident, testified that the car was traveling at a rate of speed of 45 or 50 miles an hour. Harry Byrd testified that some one in the car hollered ''lookout'' and ''when I looked up this little Negro boy and girl was in front of us, going right out

in front of us, going toward the other side of the road.''
The appellee put on his brakes immediately and tried to
avoid hitting them. On cross-examination Byrd stated
that he never did see the appellant off the pavement.
Wayne Williams testified that he saw the Negro boy
coming out off the shoulder into the highway toward
the center of the road. The boy was 50 or 60 feet ahead
of the car when he first saw him. Billy Joe Williams
testified that he first saw the bicycle when John Neal
Kittrell hollered ''lookout.'' The bicycle at that time
appeared to be angling across the highway toward the
center line. The appellee put on his brakes immediately.
There were some Negroes and another bicycle on the
right shoulder, and another car was coming from the
south. The bicycle was about 50 feet ahead of them
when he first saw it. The headlights of the automobile
were in good condition. But they were on dim because
the appellee was meeting another car.

John Neal Kittrell testified that when he first saw the
appellant and his sister on the bicycle, they were on
the shoulder of the road, off the pavement, and ''they
just darted right out in front all at once there.'' Kit-
trell called to the appellee to look out, and the appellee
applied his brakes immediately. Kittrell estimated that
the Ford car had been slowed down to 20 or 25 miles an
hour when the collision actually occurred. There were
other Negroes on the side of the road and another bicycle.
He saw no headlights on the bicycle, and he did not see
the red reflector on the rear end of the bicycle. The
headlights on the car were in good condition and the
driver could see approximately 500 feet ahead of him.

The appellant argues two points as grounds for re-
versal of the judgment of the lower court: (1) That the
court erred in granting the defendant's instructions No.
12 and No. 13, which appear on pages 169 and 170 of
the record; and (2) that the verdict of the jury is con-
trary to the overwhelming weight of the evidence.

We think that the court erred in granting the two instructions mentioned above.

The defendant's instruction No. 12, which appears on page 169 of the record, is as follows:

"The court instructs the jury for the defendant that the plaintiff had a duty and obligation under the law on the occasion in question to keep his bicycle under control and to keep a proper lookout for others on the highway at the time and to use due care not to place himself in a place of danger and not to create an emergency but to do what a reasonably prudent person would do to avoid an accident, and in this case if you believe from a preponderance of the testimony that the plaintiff failed in these respects for the protection of himself and others to avoid the accident, then it is your sworn duty to find for the defendant."

In that instruction the jury was told that if the plaintiff failed to keep his bicycle under control and to keep a proper lookout for others on the highway and to use due care not to place himself in a place of danger and not to create an emergency, he could not recover. The instruction failed to take into account the provisions of our comparative negligence statute, Section 1454, Code of 1942, which provides that the plaintiff's contributory negligence in a case of this kind shall not bar a recovery, if the proof shows that the defendant was negligent and that the defendant's negligence constituted a proximate contributing cause of the plaintiff's injuries.

The instruction was erroneous for the additional reason that it undertook to invoke as a defense to the plaintiff's action, the sudden emergency rule and yet omitted the requirement that the emergency must not have been caused by the defendant's own tortious conduct.

In the case of Jones et al. v. Dixie Greyhound Lines, Inc., 211 Miss. 34, 50 So. 2d 902, this Court held that the sudden emergency rule is not available to a party whose own negligence was the proximate cause by which the sudden and perilous situation was brought about, and

that, where there is evidence which would sustain a finding of negligence on the part of the driver of a motor vehicle in the creation of the emergency, an instruction on the emergency rule which omits the requirement that the emergency must not have been caused by the driver's own tortious conduct is misleading and erroneous. And the Court in its opinion in that case said:

"The emergency rule cannot come into operation at all if the emergency was proximately caused by the fault of the driver. A condition precedent to use of this standard is that the driver 'has used due care to avoid meeting such an emergency * * * .' 5 Am. Jur., Automobiles, Sec. 171, says: 'Where the situation of peril arises because of the driver's own negligence, the emergency rule cannot be invoked in his behalf.' "

And later, in the same opinion, the Court said: "Here there was evidence which would sustain a finding of negligence in the creation of the emergency. An instruction on the emergency rule which omits the requirement that the emergency must not have been caused by the driver's own tortious conduct is misleading and erroneous."

The rule stated and applied in the Jones case was reiterated and reaffirmed in the later case of Continental Southern Lines v. Klaas, 217 Miss. 795, 65 So. 2d 575.

Section 8176, Code of 1942, as amended by Chapter 328, Laws of 1948, provides that: " (a) No person shall operate a vehicle on the highways of the state at a speed greater than the following:

" * * *

"3. Private passenger vehicles, sixty (60) miles per hour.

" (b) The driver or operator of any motor vehicle must decrease speed * * * when special hazard exists with respect to pedestrians or other traffic, or by

reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements.''

The appellee and his witnesses in the case that we have here testified that the appellee was driving at a rate of speed of 45 to 50 miles an hour when he saw the bicycle in front of him. The highway patrolman testified that the appellee stated to him, ''I don't think I was going over 60.'' The skidmarks on the pavement showed that the appellee's car skidded 88 feet after the appellee applied his brakes; and the patrolman stated that in his judgment, based upon the distance the car skidded after the brakes were applied, the car was going at least 70 miles an hour. The appellee and his witnesses testified that there were several pedestrians walking along the roadside, that another motor vehicle was approaching from the south, and that the appellee could turn neither to the right nor to the left as he approached the point on the highway where the collision occurred. With these facts in the record the jury would have been warranted in finding that the appellee was driving his car at a greater rate of speed than was reasonable and prudent under the conditions then existing, and that the appellee was negligent in failing to sound his horn and reduce his speed as he was about to pass the group of Negroes walking along the roadside and the bicycle riders. And in view of the facts mentioned the giving of the instruction embodying the emergency rule, without including in it the requirement that the emergency must not have been caused by the appellee's own negligence, was misleading, clearly erroneous and prejudicial; and the errors in the instruction were not cured by the other instructions. Jones et al. v. Dixie Greyhound Lines, supra.

■■■ We think that the court also erred in granting the defendant's instruction No. 13, which appears on page 170 of the record. In that instruction the court instruct-

ed the jury in effect that if they believed from the evidence that the appellant's bicycle was not equipped with a light on the front and a reflector or lamp on the rear exhibiting a red light visible from a distance of 500 feet, and that the failure to have the bicycle so equipped was solely responsible for the accident, it was the duty of the jury to find for the defendant. We have carefully examined the record and find no evidence to justify the giving of that instruction. The appellant and his sister testified that the bicycle was properly equipped with a light on the front and a red reflector on the rear, and their testimony was corroborated by the testimony of the state highway patrolman, who picked up the front light and the pieces of the red reflector after the accident. It is true that the appellee testified that he did not see any lights on the bicycle, and that John Neal Kittrell testified that he did not see the reflector on the bicycle. But we think that these negative statements were not sufficient to justify the granting of the above mentioned instruction. ▇▇▇ This Court has held in many cases that it is error to grant an instruction which has no substantial support in the evidence. Williams v. City of Gulfport, 163 Miss. 334, 141 So. 288; J. W. Sanders Cotton Mill, Inc. v. Moody, 189 Miss. 284, 195 So. 683; Poteete v. City of Water Valley, 207 Miss. 173, 42 So. 2d 112; Gulf, Mobile & Ohio R. Co. v. Smith, 210 Miss. 768, 50 So. 2d 899; and Belk et al. v. Rosamond et al., 213 Miss. 633, 57 So. 2d 461.

The judgment of the lower court must be reversed because of the errors in the above mentioned instructions, and it is not necessary that we consider the other assignment of error relating to the overruling of the appellant's motion for a new trial.

Reversed and remanded.

*Roberds, P. J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.