BANKS, Justice,
for the Court:
This consolidated appeal involves two jury verdicts for money damages against Lloyd Wood Construction Company, an Alabama corporation doing business in Mississippi, (Lloyd Wood) and Cook-Coggin Engineers, Inc., a Mississippi corporation (Cook-Cog-gin). In the verdict for Dukes, the jury also found the Town of Raleigh liable.
Dukes and Little each owned property upon which the Lloyd Wood Construction Company and Cook-Coggin Engineers entered to install an underground sewage system. Both alleged Lloyd Wood and Cook-Coggin wrongfully entered their property and, once on the property, negligently caused damage. The juries, in separate trials, returned verdicts for the plaintiffs, awarding Little $10,000 in damages and Dukes $15,000 in damages. Post-trial motions were denied. The losing defendants appealed and Little cross-appealed the judgment for the Town of Raleigh.
*970 I.
Little filed an action seeking damages against Lloyd Wood, Cook-Coggin and the Town of Raleigh, Mississippi, in Smith County Circuit Court in 1985. On June 29, 1987, Dukes filed her action seeking damages against Lloyd Wood, Cook-Coggin and the Town of Raleigh, Mississippi, in Smith County Circuit Court. Little’s action was tried in July 1987, resulting in a $10,000 award against Lloyd Wood and Cook-Coggin only. Dukes’ action was tried in November 1987, resulting in a $15,000 award against Lloyd Wood, Cook-Coggin and the Town of Raleigh.
All defendants contend that the evidence was insufficient to establish either liability or damages, that the damages expert testimony was erroneously admitted, that there was impermissible hearsay and parol evidence was allowed, and that the jury was erroneously instructed as to both liability and damages.
Little argues the overwhelming weight of the evidence adduced at trial supported a verdict against the town and that the negligence of Lloyd Wood and Cook-Coggin should be imputed to the town. In addition, Little contends that the town violated a term of the easement which required the town to return the dominant and the servient estate to substantially the same condition as existed prior to the installation of the sewage system.
II.
On July 17, 1982, and January 5, 1983, Dallas Little and Ruby Gay Dukes, respectively, granted the Town of Raleigh easements for construction of a sewage system across their properties. The conveyances provided a twenty-foot permanent easement and a fifty-foot construction easement for the initial construction of the sewer line.
The town entered into a contract with Lloyd Wood to complete the sewer project on February 16, 1983. Subsequently, Cook-Coggin contracted with the town to act as engineer on the sewer project.

The Little Case

a.
Little claimed his property was damaged as a result of the installation of the sewer line. In particular, Little maintained Lloyd Wood and Cook-Coggin negligently installed and inspected the sewer line. Also, Little alleged the town was negligent insofar as the town contracted with construction companies that failed to adequately install the system, as well as restore Little’s property to its pre-construction condition.
Little testified Lloyd Wood removed trees situated on the land bounded by the easement. These trees were removed from the property before Little had an opportunity to sell them. Little also testified that sand which Lloyd Wood transported to the construction site ran off into a pond on Little’s property, causing a sand bar to form in the pond. Finally, as a result of the displacement or removal of natural obstacles both on and off the area bounded by the easement, Little testified a portion of his property suffered from erosion.
On cross-examination, Little stated his property had been substantially restored to its original appearance with the exception of the sand bar and the removal of trees from the area bounded by the easement. Little admitted that he was aware before he granted the easement to the town that a wide strip of timber would have to be removed from his property and could not be replanted over the sewer. Thus, the only alteration to Little’s land he did not anticipate, according to his testimony, was the sand bar. This sand bar was described as a “delta” fifty by one hundred and fifty feet at the point of entry of one of the natural streams that feed the three- to five-acre pond.
Little’s pond restoration expert testified improper installation of the sewage line contributed to the formation of the sand bar in Little’s pond. The pond expert estimated it would cost $31,700 to completely rework the pond by removing silt from its bottom. In giving this figure, the expert made no attempt to relate this figure to the damage caused by the erosion from the sewage line construction.
*971 Little’s timber expert, Jerry Hawkins, testified the stumpage value of the trees removed from the area bounded by the easement amounted to $1,200.[1] The timber expert then testified that removal of the sand bar would cost $5,000. Finally, the timber expert stated the fair market value of the servient estate was $100,000 before the sewer line was installed and $90,000 after the installation was completed. On cross-examination Hawkins admitted that he had been unable to give a before value at the time of his deposition or at any time prior to his determining that the tax valuation of the property was $96,000. He secured no other information between deposition and trial. In the end, his estimation of diminution of value was clearly no more than a calculation of what he perceived to be elements of damage to the property.
Hawkins testified that the decrease in the land value was attributed to the $1,200 of stumpage removed and the $5,000 cost to remove the sand bar. This last estimate was based solely upon a conversation that Hawkins had with the pond expert outside the courtroom. Defendants objected to the testimony, and the court directed that they renew their objection after the testimony. The objection was never renewed. Hawkins then testified that the additional diminution of $3,800 was for replacement of the timber on the property.
Lloyd Wood’s realty expert testified the servient estate had a fair market value of $96,600 prior to the installation of the sewer line and $97,800 after installation.
A resident inspector from Cook-Coggin testified that Lloyd Wood was responsible for all construction work at the site and that Cook-Coggin was responsible only for keeping track of the type of materials being used to complete the project and observing the subterraneous induction of the sewer pipe to ensure proper installation. On cross-examination, the inspector stated that installation of the sewer line caused some silt to run off into the pond, but that the run off did not amount to an “extreme amount.”
Cook-Coggin’s project manager testified as well, stating the construction work done on the sewer line met with all plans and specifications and that the work was formally accepted by the Town of Raleigh.
The Little jury returned a verdict for Little, awarding damages in the amount of $10,-000 against Lloyd Wood and Cook-Coggin.
b.
The case is fraught with error. The jury was insufficiently guided by the instructions as to both liability and damages as to all defendants. There was no evidence whatsoever to support a claim of negligence or liability on any other theory against Cook-Coggin. By the most slender thread, plaintiffs evidence presents a basis for recovery from Lloyd Wood for the wrongful removal of the severed timber. The claim for damage to the pond against Lloyd Wood must fail because there is no evidence whatever that Lloyd Wood performed in an unworkmanlike manner or committed any other act of negligence.
The only substantive instruction given for Little was to the effect that, if the jury found that the defendants, collectively, “negligently allowed erosion into Dallas Little’s pond and/or unnecessarily damaged trees and land” it could award damages not to exceed “the difference between the fair-market value before and the fair-market value after such damages occurred.” No further instruction was given to indicate the manner in which any defendant was negligent. There was no testimony whatever that there was unnecessary damage to trees.
It is elementary that an instruction allowing the jury to find negligence must do so other than in the abstract. Estate of Lawler v. Western, 451 So.2d 739, 741 (Miss.1984); Freeze v. Taylor, 257 So.2d 509, 511 (Miss.1972). That is, a charge of negligence must be grounded in an allegation of specific conduct, acts or failures to act, which may be deemed inconsistent with reasonable prudence under the circumstances. Rucker v. *972 Hopkins, 499 So.2d 766, 772 (Miss.1986) (instruction to the effect that if jury found that trucking company employees were negligent proximately causing the accident, it could find for plaintiff, held erroneous because it failed to specify the manner in which the defendants were negligent); Mills v. Balius, 264 Miss. 353, 360-61, 180 So.2d 914, 916-17 (1965) (instruction that jury must find for plaintiff in automobile collision action where jury finds the defendant was negligent and that the negligence was proximate cause of injuries constitutes reversible error where instruction fails to designate what actions of the defendant were negligent). We have also made clear that no instruction should be given which is not supported by the evidence. Lucas v. Mississippi Hous. Auth. No. 8, 441 So.2d 101, 104 (Miss.1983) (instruction presenting fact question of whether decedent’s mother was negligent in leaving decedent in the temporary care of a guardian constituted reversible error where no evidence was adduced that the mother acted in an imprudent manner in leaving the decedent with the guardian or that the guardian negligently eared for the decedent); Rex Nitrogen & Gas Co. v. Hill, 213 Miss. 698, 703, 57 So.2d 173, 174 (1952) (instruction on “impractieality” theory in a breach of contract action where no evidence in the record exists in support of an impracticality defense is erroneous).
Because the instruction under consideration bears little resemblance to the evidence and any viable theory of recovery and because the evidence fails to support such a theory we must reverse. It appears from the record that no instruction was offered concerning the contractual duty of the Town of Raleigh to restore Little’s property to substantially the same condition as it was before the use of the easement. In any event, there was conflicting testimony on this issue which would support the jury verdict in favor of the Town of Raleigh.
Little’s claim for the loss of cut timber survives. This is unrelated to any damage to the property as a whole. System Fuels, Inc. v. Barnes, 363 So.2d 747, 749 (Miss.1978) (damage award resulting from removal of timber from area bounded by easement are to be considered separate from a damage award for the cost of restoring property to original condition); Chevron Oil Company v. Snellgrove, 253 Miss. 356, 175 So.2d 471, 475 (1965) (where there are merchantable trees lost as well as other damages, the measure of damages may be the value of the merchantable trees and the diminution of value of the land other than that attributable to the loss of the merchantable trees); Stigall v. Sharkey County, 213 Miss. 798, 807, 58 So.2d 5, 6 (1952) (“before and after” rule applies only to permanent damage to property and, when crop is destroyed through negligence of respondent, plaintiff is entitled to the value of his crop at the time crop was destroyed).
We reverse the judgment against Lloyd Wood and remand for further proceedings. On remand Little’s claim is limited to the issue of whether Lloyd Wood wrongfully removed severed timber. We reverse and render as to the judgment against Cook-Cog-gins and affirm the judgment in favor of the Town of Raleigh.

The Dukes’ Case

a.
The general allegations of negligence against Lloyd Wood, Cook-Coggin and the town were identical in the Little and Dukes eases. In the latter case, however, Dukes, who lived and raised cows on the servient estate, alleged more damage to her property than that claimed by Little. In addition to the stumpage value of timber that was removed from her property, Dukes claimed the removal of the trees altered the contour of her property to such a degree that ground water could not drain normally. The standing water, Dukes alleged, damaged vegetation. Furthermore, Dukes claimed the removal of culverts exacerbated drainage difficulties on the servient estate, causing enhanced damage to vegetation.
Dukes alleged she was entitled to damages for the failure of the defendants to repair a roadway on her estate which was damaged during installation of the sewer pipe. Additionally, Dukes sought damages for the alleged effect the underground pipe had on *973 altering the course and depth of a tributary that ran through her property. Finally, Dukes testified that repairs made by Lloyd Wood to a fence on her property did not return the fence to a substantially similar condition as required by the easement.
Dukes’ land evaluation expert testified the value of the servient estate decreased $15,-000: from $80,000 before the sewer project began to $65,000 after the project was completed. He arrived at this amount in much the same manner as he did in the Little case. In addition, he testified that it would cost $20,000 to restore the property to its original condition. According to Dukes’ expert, the amount of damages incurred by Dukes:
[Consisted of more or less what it would take to restore the property back to its near natural condition. It consisted of an estimation of what timber was removed from the property; it consisted of what the value of the land that was taken out for right-of-way; it consisted of what it would take to put some gravel back on the road.
On cross-examination this witness admitted deposition testimony that would establish current value at from $84,000 to more than $100,000. His $15,000 “diminution” figure turned out to be a compilation of various items, including $2500 for the stumpage value of trees cut, $1890 for the “loss of use” of the land covered by the easement (or 3.15 acres at $600 per acre) and $11,000 to place fill dirt on the easement.
Lloyd Wood’s realty expert testified that the value of the servient estate prior to the installation of the sewer pipe was $93,300. The expert then testified the value of the property after the construction project was completed was $104,105. These calculations were not affected by the value of the home on the servient estate. According to both experts, the home experienced no increase or decrease in value as a result of the sewer project. Finally, while this witness testified that he did notice flooding on the servient estate, he was of the opinion that the accumulation of water was caused by beaver dams and not by the installation of the sewer pipe.
Lloyd Wood’s timber expert testified that he examined Dukes’ property a little less than three years after the project was completed and that he found no evidence of tree removal from, or any other damage to, Dukes’ property outside of the area bounded by the easement. Regarding the land bounded by the easement, the expert testified that the land had been restored to substantially the same condition as before the sewer line was installed.
As in the Little case, Lloyd Wood’s project manager testified that construction work done on the sewer line met with all plans and specifications and that the work was formally accepted by the Town of Raleigh. The project manager expressed the opinion that the Dukes’ property was substantially restored to its pre-construction conditions.
On Cook-Coggin’s cross-examination, the project manager testified that Cook-Coggin did absolutely no excavation or installation work on the sewer project and functioned only as engineer of the project.
The Dukes’ jury returned a verdict for Dukes, awarding damages in the amount of $15,000 against Lloyd Wood, Cook-Coggin and the Town of Raleigh.
b.
As in the Little case, the instructions here were hopelessly muddled. The only instruction allowing a verdict against Cook-Coggin was one holding it responsible for excessive damage caused by Lloyd Wood and the failure to restore on the part of the Town of Raleigh. Cook-Coggin was not shown to have assumed a duty to the plaintiff in this respect. It follows that the verdict against it must fail.
The evidence of negligence on the part of Lloyd Wood is similarly lacking. There was little evidence of damage outside the easement and no testimony that damage within the easement was excessive. There was testimony to the effect that the property suffered some erosion. The exact extent of this erosion is not readily apparent from the record. There is no testimony suggesting that Lloyd Wood could have constructed the line in question in a manner which would have avoided the erosion claimed. For these failings the judgment against Lloyd Wood *974 must be reversed except to the extent that Lloyd Wood may be found responsible for the loss of the stumpage value of the merchantable trees cut from the right-of-way.
The Town of Raleigh on the other hand, agreed to restore the property to its previous condition. The jury was allowed to find that it had not fulfilled this contractual obligation. On this record, however, it is not possible to determine that the jury so found. It is also apparent that damages have been pyramided in that in arriving at his estimate of damages, the plaintiffs damage expert assessed amounts to which plaintiff was not entitled. For example, damages were assessed for “loss of use” of the acreage in the easement. This loss is a part of the easement agreement and no compensation is due. There was an assessment of $11,000 for restoration of the property without clear evidence of the acreage to be restored. There is evidence to the effect that the area to be restored is the easement. If that is the case, damages are pyramided, by reference to the damages for loss of use, and excessive, in that the amount allowed is greatly in excess of the total value of the acreage involved. Here we deal only with land, not an improvement or a severable asset. Restoration costs may not exceed the total value of the acreage.
CONCLUSION
For the foregoing reasons, the judgments of the circuit court, except that in favor of the Town of Raleigh in the Little case, are reversed. Judgment is rendered in favor of Cook-Coggins. The causes of action against Lloyd Wood for conversion of stumpage value is remanded for further proceedings. Dukes’ cause of action against the Town of Raleigh is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, RENDERED IN PART AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
ROBERTS, J,, not participating.

. Lloyd Wood's expert testified the timber removed from the easement area amounted to $624.40.