636 So.2d 377 (1994)
Rebecca B. McCARTY and Norman McCarty
v.
John P. MLADINEO, M.D.
No. 91-CA-00455.
Supreme Court of Mississippi.
March 10, 1994.
Rehearing Denied June 2, 1994.
*378 Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellant.
Whitman B. Johnson, III, Steen Reynolds Dalehite & Currie, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
SULLIVAN, Justice, for the Court:
Rebecca McCarty and her husband, Norman McCarty, filed suit against Dr. John Mladineo, alleging breach of the professional standard of care. A week-long trial before Special Judge James Sumner resulted in a verdict in Dr. Mladineo's favor. Judge Sumner having denied their motions for j.n.o.v. and new trial, the McCartys appeal, assigning six errors.
We reverse and remand for a new trial, based on a combination of two out of the six assignments of error on appeal.
THE LOWER COURT ERRED IN:
(1) REFUSING JURY INSTRUCTION P-2 AND SUBSTITUTING COURT'S INSTRUCTION C-4; and
(2) PRECLUDING PART OF THE REDIRECT EXAMINATION OF DR. CLARKE-PEARSON.

FACTS
At age 30, Rebecca McCarty was diagnosed with cervical cancer, and was referred to Dr. John Mladineo. Rebecca checked in to the hospital to be prepared for surgery scheduled to be performed by Dr. Mladineo on March 31, 1987. On the 29th, McCarty's first day in the hospital, Dr. Mladineo ordered dosages of heparin. He ordered heparin as a pre-surgery preventive measure against blood clotting, as he decided that McCarty was at risk of blood clotting. However, heparin administration carries the risk of causing drastic drops in one's blood platelet count. Heparin was administered to Rebecca until midnight before her surgery on the 31st. After surgery, Dr. Mladineo again required heparin doses to be administered to Rebecca.
On March 29, the day Rebecca first entered the hospital, her platelet count was 257,000. Three days after surgery, April 4, her platelet count was 218,000.
On April 7, however, her platelet count was a mere 33,000. Dr. Mladineo did not see the report of Rebecca McCarty's platelet count on April 7, and did not discontinue the heparin administration until April 9, when her platelet count was 24,000. For about one month, her platelet count remained below 100,000.
About one week after surgery, Rebecca began having headaches, which she informed Dr. Mladineo and the nurses about. At one *379 point, Rebecca turned her head and felt a great pain in her head, which felt to her like a gun shot. After that, she could not tolerate television, lights, or conversation with others.
Then, on April 17, she suffered either a stroke or a cerebral hemorrhage. On April 25, she had a heart attack. Rebecca was released from the hospital on May 13. As a result of the stroke and heart attack, Rebecca has difficulty seeing to her left, and cannot drive and do normal housework. Her nerve motor capacity is not up to par, and she has diminished concentration ability.
The main fact question for the jury was whether Dr. Mladineo, by not discovering the drastic drop in platelet count, breached the standard of care.
Among other plaintiffs' experts, Dr. Daniel Clarke-Pearson, a gynecologic oncologist, testified that Dr. Mladineo's failure to properly monitor Rebecca's heparin administration caused her stroke and heart attack. He stated that the failure to monitor the drastic drop in platelet count during an approximate 2-day interval was a violation of the standard of care. Dr. Clarke-Pearson testified that he thought it would be the same as the standard with which he was familiar  that is, what over half of doctors would do in the situation. Dr. Clarke-Pearson said that Dr. Mladineo violated the standard of care, assuming that standard was "I believe, what more than half the physicians would do with their fund of knowledge that we have." This case was the first time he had testified in court about malpractice. His testimony on the standard of care, that is, the inaccurate standard, was elicited on cross-examination by Dr. Mladineo's attorney. The McCartys requested an opportunity to rehabilitate Dr. Clarke-Pearson, hoping to elicit similar conclusions, but based on the Mississippi standard of care. The McCartys' attorney asked on re-direct:
Are you familiar with what a minimally competent adequate standard for the use of heparin and monitoring is?
In response to an objection by Dr. Mladineo's attorney, the McCartys' attorney said:
Your Honor, I think I'm allowed to rehabilitate my own witness.
The Court responded:
He's already stated in the record on direct examination that he was familiar with the standard of care and it's repetitious.
Later, in response to Dr. Mladineo's request to instruct the jury to disregard Dr. Clarke-Pearson's testimony with regard to whether Mladineo breached the standard of care, the trial judge stated that he had made a mistake in precluding the re-direct examination of Dr. Clarke-Pearson. Dr. Mladineo's attorney argued that since Dr. Clarke-Pearson testified that Dr. Mladineo violated a higher standard than was the standard in Mississippi, then Dr. Mladineo's defense was unfairly prejudiced. The judge further stated that the instruction would be denied, in that Dr. Clarke-Pearson's testimony was important to the plaintiffs' case, along with the fact that he should have allowed the plaintiffs to rehabilitate their witness.
The McCartys proposed the following jury instruction, "P-2."
The Court instructs the jury that the Defendant, Dr. John P. Mladineo, was under a duty, in his treatment and care of Rebecca B. McCarty, to apply that reasonable degree of training, care, knowledge and skill possessed by minimally competent physicians in the same or similar field of practice, and confronted with the same or similar situation.
The Court further instructs the jury that if you find from the preponderance of the credible evidence that the Defendant, Dr. John P. Mladineo, failed to exercise the reasonable degree of training, care, knowledge and skill, in the administration of Heparin therapy to Rebecca McCarty that would have been exercised by other reasonable, prudent, and competent physicians practicing in the same or similar situation, and as a direct and proximate result of such failure, Rebecca B. McCarty suffered injuries, then it is your sworn duty to return a verdict in favor of Plaintiffs, and against the Defendant.
The lower court refused to grant the McCartys' jury instruction P-3. It states:

*380 As to Defendant Dr. John P. Mladineo, the Court instructs the jury that the term "negligence," as used in these instructions, means the failure to use and/or excercise such reasonable diligence, skill, competence, and prudence as is practiced by surgeons throughout the United States under similar circumstances.
If you find from a preponderance of the credible evidence that the Defendant, Dr. John P. Mladineo, failed to excercise such reasonable diligence, skill, competence, and prudence during the Heparin therapy he administered to Rebecca B. McCarty, then Defendant John P. Mladineo was negligent.
The lower court used the following jury instruction, C-4, instead:
The Court instructs the jury that if you find from a preponderance of the credible evidence in this case that during his care and treatment of Mrs. McCarty, Dr. Mladineo failed to provide her with that degree of care, skill, and diligence which would have been provided by a minimally competent physician administering mini-dose heparin therapy when faced with same or similar circumstances, and that such failure was the sole proximate cause or proximate contributing cause of Plaintiff's injuries, if any, then you shall return a verdict for the Plaintiffs.
Instruction D-8A, granted, instructed the jury that negligence meant that the doctor had breached his duty to provide "that degree of care, skill, and diligence which would be practiced in the same or similar circumstances by a minimally competent physician in the same area of medicine."

LAW
Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), states that the physician must treat the patient with "such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty... ." Hall, 466 So.2d at 873.
Instruction C-4 instructed the jury that Dr. Mladineo had a duty to provide the McCartys the standard of care minimally expected of physicians faced with similar circumstances. The McCartys argue that the standard of care, in Mississippi, is a reasonable prudence standard. They argue that their proposed instruction, P-2, was a more accurate statement of the law than C-4, which the Court substituted. Instruction P-2 contained two paragraphs. In the first, it defined the standard of care, using the phrase, "minimally competent," along with the reasonable degree of skill language. The second paragraph used the phrase, "reasonable degree of training, care, knowledge, and skill," without mentioning "minimally competent." The Court's instruction, C-4, used only one paragraph, using the "minimally competent" theme, without mentioning reasonable skill.
It appears that the reason the court preferred C-4 to P-2, was, in part, due to C-4's assertive use of the "minimally competent" theory. C-4 gave a single definition of the standard of care. But P-2 would have been potentially confusing, because in one place it used the "minimally competent" theme, but in another paragraph, it used only the "reasonable degree" wording. When arguing about these instructions, counsel for the McCartys, Mr. Gilmer, stated that he thought that the "reasonable degree of training, care, skill, and knowledge is the minimally competent level." However, he argues that P-2 was a more accurate statement of the law, because the standard of care is a reasonableness standard, which he alleges is a higher standard than the minimally competent physician standard. He argues that though Hall contains minimally competent language, the law in Mississippi had always been reasonableness, and that Hall did not intend to change that. Reasonableness is part of the negligence test in Mississippi, as malpractice claims are tort claims requiring proof of duty, breach, causation, and damages. Palmer v. Biloxi Regional Medical Center, 564 So.2d 1346, 1354 (Miss. 1990).
The physician must provide the standard of care provided by minimally competent physicians. If his actions in trying to meet that duty of care are unreasonable, then he has been negligent.
It must be noted that the trial judge, towards the end of the trial, admitted that he *381 made a mistake in disallowing the McCartys to attempt to re-direct Dr. Clarke-Pearson on the proper standard of care.
Because Instruction C-4 left out the "reasonableness" portion of the Hall v. Hilbun standard, the instruction was an inaccurate statement of the law. Because the court erred in precluding the McCartys attempt to rehabilitate Dr. Clarke-Pearson, the entire facts were not disclosed to the jury.
We suggest to the bench and bar of this State the use of the following instruction, when applicable, instead of Instruction C-4 as used in this case:
The Court instructs the jury that if you find from a preponderance of the credible evidence in this case that during his care and treatment of Mrs. Plaintiff, Dr. Defendant failed to provide her with that degree of care, skill, and diligence which would have been provided by a reasonably prudent, minimally competent physician administering mini-dose heparin therapy when faced with same or similar circumstances, and that such failure was the sole proximate cause or proximate contributing cause of Plaintiff's injuries, if any, then you shall return a verdict for the Plaintiffs.
The term "reasonably prudent" speaks to the care and diligence that a professional must bring to a task. It is the same for all professional persons. That is one must act reasonably or exhibit reasonable prudence under the circumstances. The term "minimally competent" is one which describes the degree of skill and knowledge that a professional must bring to the task. This is what is different about malpractice cases. A minimally competent physician, lawyer, accountant, etc., is one whose skills and knowledge are sufficient to meet the licensure or certification requirements for the profession or specialty practiced. That person is required to act as a reasonably prudent person with the required knowledge and skill would act in the same circumstances. In a case that does not involve professional malpractice, there is no need to talk about minimal competence because there is no specialized skill or knowledge involved.
Though one of these errors alone may not have been reversible error, when taken together, they are cause to reverse. The verdict is to be based on two things: the jurors' conclusions of fact, and the court's instructions of law. Inaccuracies existed in both the instructions of law and in the presentation of facts, thus, making the verdict all the more questionable than where such an error stands alone. We are compelled to reverse and remand for a new trial.
In the court below, the McCartys moved for a j.n.o.v. and a new trial. We reverse and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, JR. and SMITH, JJ., concur.