¶ 1. Patrick L. Daughtry, Jr. filed a complaint in the Circuit Court of Warren County alleging medical malpractice based on a breach of the standard of care for a minimally qualified physician practicing surgery. The jury returned a verdict in favor of Dr. Kuiper. Aggrieved by the jury's verdict, Daughtry has appealed and raised the following issues which we quote verbatim:
 I. Whether, as a matter of law, the Appellee, Hendrick K. Kuiper, M.D.'s own admission of the breach of the standard of care in failing to perform a total thyroidectomy, for which he admitted he had no reasonable explanation, entitled Patrick Daughtry, Jr. to a judgment against him, there being no dispute as to the necessity of the second surgery to remove the substantial portions of the thyroid left in Daughtry's body by Dr. Kuiper.
 II. Whether the honorable trial court erred in refusing Daughtry's requested peremptory instruction on the issue of liability of Dr. Kuiper, and whether the court erred in denying Daughtry's Rule 50(b) motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, when the admissions of the Defendant, which were undisputed, clearly showed negligence and a breach of the applicable standard of care as the proximate cause of the damages claimed by Daughtry.
 III. Whether the honorable trial court erred in denying Daughtry's motion to exclude the testimony and opinions of Dr. Ralph Didlake, Kuiper's expert witness, when his testimony and opinions constitutes [sic] mere surmise, conjecture and speculation, not supported by any facts contained in the record in this cause, and which clearly contradicted the admission of the Defendant that he had no reasonable explanation why the total thyroid was not removed. *Page 677 
 IV. Whether the honorable trial court erred in its response to the jury regarding their query regarding the "standard of care" because it failed to state the applicable law.
 V. Whether the court erred in granting Defendant's Instructions [sic] D2A [sic] because the same amounts to an "exercise in judgment on the good faith error in judgment" based on hindsight.
 FACTS
¶ 2. In December 1993, Daughtry noticed a lump in his neck. He saw Dr. Paul W. Pierce in Vicksburg, Mississippi. Dr. Pierce, an internal medicine physician, referred Daughtry to Dr. Kuiper.
¶ 3. During the examination, Dr. Kuiper noted that Daughtry had a mass at the "left root of the neck with a palpable discrete lymph node." On January 11, 1994, Dr. Kuiper performed an incisional biopsy on Daughtry. Dr. Kuiper made "an incision directly over the mass." After dividing the platysma muscle, "the mass was identified" and removed. Dr. Kuiper stated that, as far as he could tell, he had removed all of the tissue.
¶ 4. Upon removal, Dr. Kuiper sent the tissue to the Vicksburg Medical Center Pathology Department, where it was determined that the tissue was cancerous. Daughtry was diagnosed as having papillary thyroid cancer. Dr. Kuiper indicated that, based on the pathology report, he planned to remove the "whole thyroid gland."
¶ 5. On February 1, 1994, Dr. Kuiper performed a "total thyroidectomy" on Daughtry. At trial, Dr. Kuiper testified that he was surprised at the small size of Daughtry's thyroid but believed that he removed both lobes of the thyroid at the time of the surgery. Dr. Kuiper further indicated that he explored the surgical field and determined that there were no other lymph nodes in that surgical field.
¶ 6. After the surgery, Daughtry was referred to Baptist Hospital for iodine treatment. He stated that the doctors at Baptist indicated that his "thyroid hormone level should start dropping." His thyroid hormone level did not drop and, as a result, an ultrasound was performed. The ultrasound scan revealed that thyroid tissue was still present in Daughtry.
¶ 7. Daughtry was then referred to the University Medical Center for treatment. On April 7, 1994, Dr. Ann Thompson-Mancino and a resident at the hospital performed the second surgery and removed the residual tissue.
¶ 8. At trial, Dr. Thompson-Mancino indicated that Dr. Kuiper did not adhere to the standard of care for minimally qualified surgeons because he did not perform a total thyroidectomy. However, she did state that she believed that "it was an honest mistake."
¶ 9. As an expert witness for the defendant, Dr. Didlake indicated that in his opinion, there could have been a "congenital anomaly of the thyroid position or an anatomic distortion due to unusual tumor growth." Dr. Didlake testified that Dr. Kuiper exceeded the level of care in his treatment of Daughtry.
¶ 10. The jury returned a verdict in favor of Dr. Kuiper. Subsequently, Daughtry filed a motion for judgment notwithstanding the verdict, or in the alternative a new trial, which was denied.
 ISSUES AND ANALYSIS I. Whether the trial court erred in denying Daughtry's peremptory instruction and subsequent motion for judgment notwithstanding the verdict, or in the alternative, a new trial.
¶ 11. Daughtry contends that the trial court erred in denying his requested *Page 678 
peremptory instruction[1] on the issue of liability and that the trial court erred in denying his Mississippi Rule of Civil Procedure 50(b) motion for judgment notwithstanding the verdict, or in the alternative, a new trial.
¶ 12. This Court reviews a request for a peremptory instruction in the following manner:
 The standard requires the trial court to consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that may be derived from the evidence, as well as contemplating any uncontradicted evidence presented by the moving party. The Mississippi Supreme Court has also held that an issue should only be presented to the jury when the evidence creates a question of fact on which reasonable jurors could disagree.
Walker v. Reed, 773 So.2d 374 (¶ 9) (Miss.Ct.App. 2000) (citations omitted).
¶ 13. A motion for judgment notwithstanding the verdict, or in the alternative, a new trial is viewed as follows:
 A motion for jnov is the equivalent of challenging the sufficiency of the evidence to support the jury's verdict. A jury verdict can only be set aside when it is based on legally insufficient evidence or it is against the substantial weight of the evidence. Furthermore, we review "the evidence as a whole, taken in the light most favorable to the verdict" and will reverse only if "no reasonable, hypothetical juror could have found as the jury found."
Brandon HMA, Inc. v. Bradshaw, 809 So.2d 611 (¶ 13) (Miss. 2001) (citations omitted).
¶ 14. In this case, Daughtry maintains that his motion for judgment notwithstanding the verdict should have been granted due to the "uncontradicted evidence" presented. He claims that Dr. Kuiper's admission that he had no reasonable explanation as to why he failed to remove the entire thyroid gland entitled him to a new trial.
¶ 15. Dr. Kuiper testified that he had properly followed the standard of care and that he believed that he had removed both lobes of the thyroid at the time. The fact that the results of the doctor's treatment were unsuccessful does not give rise to a presumption of negligence. Kilpatrick v. Mississippi Baptist Medical Center,461 So.2d 765, 768 (Miss. 1984). There existed a conflict in the evidence as to whether Dr. Kuiper had exercised reasonable care. Where such a conflict exists, a peremptory instruction is not appropriate. Herringtonv. Spell, 692 So.2d 93, 99 (Miss. 1997).
¶ 16. Upon review of the proposed jury instruction and the record, this Court finds that the trial court did not err in denying Daughtry's peremptory instruction.
 II. Whether the trial court erred by allowing Dr. Didlake, an expert witness to testify.
¶ 17. Daughtry contends that the trial court erred in denying his motion to exclude the testimony and opinions of Dr. Ralph Didlake, Dr. Kuiper's expert witness. He asserts that Dr. Didlake's opinions were mere speculation and were not supported by any facts. Dr. Didlake testified that: *Page 679 
 A. My opinion is based upon review of the medical records, my training, practice and experience in this area, my knowledge of the two surgeons involved.
 . . .
 A. I think, this tissue was probably somewhat above this distorting the underlying normal anatomy and possibly even containing a congenital anomaly. It's very difficult to predict or to know from the operative report exactly where this tissue would be because it's my opinion that there was distortion by tumor as supported in this operative note where it says "Demonstrating changes of nodule or hyperplasia." So it is my opinion that there was significant distortion and/or a congenital anomaly. So to try to predict or demonstrate where that tissue was would be extremely difficult.
¶ 18. In support of his contention that Dr. Didlake's opinions should not have been allowed, Daughtry relies on APAC-Mississippi, Inc.v. Goodman, 803 So.2d 1177 (¶ 30) (Miss. 2002), where it was determined that:
 [U]nder the guidelines of the Mississippi Rules of Evidence Rule 702, the trial judge serves as a "gatekeeper" in ruling on the admissibility of expert testimony. The Supreme Court of Mississippi has advised that "[t]he facts upon which the expert bases his opinion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture." The facts relied upon "must afford a `reasonably accurate basis' for the expert's conclusion."
¶ 19. To determine whether to exclude expert testimony and opinion, this Court adheres to the following:
 The admission of expert testimony is controlled by the trial judge's discretion. This Court will not disturb the trial judge's decision unless there was a clear abuse of that discretion. . . .
 Before a person can testify as an expert, he or she must first be qualified as an expert. In order to qualify as an expert, a person "must possess some experience or expertise beyond that of the average, randomly selected adult."
Stanton v. Delta Regional Medical Center, 802 So.2d 142 (¶¶ 4, 5) (Miss.Ct.App. 2001) (citations omitted).
¶ 20. In this case, the trial judge determined that Dr. Didlake's testimony and opinion regarding what he thought may have occurred as a result of Dr. Kuiper's not removing the entire thyroid gland was appropriate based on Watkins v. U-Haul Intern., Inc., 770 So.2d 970
(¶ 10) (Miss.Ct.App. 2000), which states that:
 There are two prongs that must be met under Rule 702 before expert testimony is admissible at trial. One prong requires that the witness be qualified as an expert. In other words, he is an expert and may testify in the form of an opinion or otherwise because of the knowledge, skill, experience, training, or education he holds. The second prong requires that the evidence be scientific, technical, or otherwise cover an area of specialized knowledge which will assist the trier of fact, in this case, the jury, to understand or decide a fact in issue.
The trial judge indicated that Dr. Didlake had been qualified and accepted as an expert, which met the first prong of the test. The trial judge further stated that the second prong had been met when Dr. Didlake testified that he had reviewed the records and based his opinion on knowledge beyond that of a lay person.
¶ 21. There was no objection to having Dr. Didlake qualified as an expert in the field of general surgery. Under our rules of evidence, we find that the trial judge did *Page 680 
not abuse his discretion in allowing Dr. Didlake to testify.
 III. Whether the trial court erred in its response to the jury's query regarding the standard of care for minimally qualified doctors.
¶ 22. Daughtry contends that the trial court erred in its response to the jury regarding their query about the standard of care. He maintains that the trial court failed to state the applicable law.
¶ 23. The jury asked, "What is meant by `standard of care for minimally qualified doctors' in terms of years and/or experience?" After an extensive discussion with all of the attorneys involved regarding the jury's query, the trial court responded as follows:
 BY THE COURT: Let's see the standard of care does not depend on any certain number of years or experience but requires the skill and knowledge sufficient to meet the licensure requirement for the profession. The physician is required to act as a reasonable prudent physician would act under the same circumstances.
¶ 24. This response is similar to the definition given in West v.Sanders Clinic for Women, 661 So.2d 714, 719 (Miss. 1995), which states:
 In McCarty v. Mladineo, 636 So.2d 377 (Miss. 1994), we explained that a physician "must provide the standard of care provided by minimally competent physicians. If his actions in trying to meet that duty of care are unreasonable, then he must be negligent." Id. at 380. We defined "minimally competent" as describing "the degree of skill and knowledge that a professional must bring to the task." Id. at 381.
 A minimally competent physician, lawyer, accountant, etc., is one whose skills and knowledge are sufficient to meet the licensure or certification requirements for the profession or specialty practiced. That person is required to act as a reasonably prudent person with the required knowledge and skill would act in the same circumstances.
¶ 25. Daughtry had no objection to the trial court's response. He is therefore barred from objecting to this for the first time on appeal.Mississippi Baptist Foundation, Inc. v. Estate of Matthews, 791 So.2d 213
(¶ 16) (Miss. 2001).
 IV. Whether the trial court properly granted Dr. Kuiper's jury instruction DK-2A.
¶ 26. Daughtry contends that the trial court erred in granting jury instruction DK-2A. He claims that this instruction was not supported by the evidence and was an improper statement of the law. Jury instruction DK-2A stated the following:
 A physician is not a guarantor of his diagnosis and treatment, nor is the standard of care that of perfection in the care, treatment or diagnosis of a patient's condition.
 The Court further instructs the jury that medicine is not an exact science and liability may not be imposed upon a physician exercising that degree of care, skill and diligence which would have been provided by a reasonably prudent, minimally competent physician in the field of surgery, and who without the benefit of hindsight may have made a different diagnosis or rendered different treatment.
 Instead, a physician has a duty to exercise that degree of care, skill and diligence which would have been provided *Page 681 
by a reasonably prudent, minimally competent physician in the field of surgery under like or similar circumstances in the United States.
 Thus, even if you should find from a preponderance of the evidence that Hendrik K. Kuiper, M.D. could have made a different diagnosis or treatment of the Plaintiff, you must return a verdict in favor of Hendrik K. Kuiper, M.D., unless, in caring for the plaintiff, Dr. Kuiper failed to exercise that degree of care, skill and diligence which would have been provided by a reasonably prudent, minimally competent physician practicing in the United States in the field of surgery under the same or similar circumstances.
¶ 27. In reviewing jury instructions, this Court "does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." Day v. Morrison,657 So.2d 808, 814 (Miss. 1995). At trial, Daughtry objected to the above jury instruction citing that the instruction used the element of good faith medical judgment contrary to another expert's opinion. Error of judgment instructions are improper. Day v. Morrison, 657 So.2d 808, 812-15 (Miss. 1995). In this instance, the trial judge redacted the first part of the instruction pertaining to the objection. Daughtry's counsel stated, "I don't see anything wrong with the rest of it, Your Honor."
¶ 28. Having waived objection to the remaining portion of the jury instruction, this Court finds that this issue has not been preserved for appeal. Dixie Ins. Co. v. Mooneyhan, 684 So.2d 574, 589 (Miss. 1996).
¶ 29. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT ISAFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER ANDGRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.
[1] Jury Instruction P-1 (denied): The Court instructs the Jury to return a verdict for the Plaintiff, Patrick Daughtry and against the Defendant, Dr. Hendrick Kuiper, and to assess Plaintiff's damages in accord with other instructions given you in this cause.