964 So.2d 552 (2007)
Carl Edward BECKWITH and Stanley Marshall, et al., Executors of the Estate of Helen Beckwith, Deceased, Appellants,
v.
Nikhil S. SHAH, M.D., Appellee.
No. 2003-CA-01624-COA.
Court of Appeals of Mississippi.
June 5, 2007.
Rehearing Denied September 11, 2007.
David L. Merideth, Ridgeland, Philip Mansour, Greenville, Attorneys for Appellants.
Lonnie D. Bailey, Greenwood, Willie L. Bailey, Tommie G. Williams, Attorneys for Appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
*554 LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On the morning of July 3, 1999, Helen Beckwith entered Delta Regional Medical Center in Greenville, Mississippi, to have a colonoscopy performed by Dr. Nikhil Shah. There were complications during the procedure; specifically, a perforation of Helen's colon. After an unsuccessful surgery to correct the perforation, Helen died later that same day. Other pertinent facts will be discussed as necessary.
¶ 2. On December 21, 1999, Carl Beckwith and Stanley Marshall, executors of Beckwith's estate (hereinafter Beckwith), filed a complaint in the Washington County Circuit Court against Dr. Shah. Beckwith alleged that Dr. Shah was grossly negligent in his treatment of Helen and therefore liable for her death. Beckwith sought actual, compensatory and punitive damages. Dr. Shah then filed an answer in which he denied the allegations. After a one week trial beginning April 16, 2001, the jury returned a verdict in favor of Dr. Shah. After Beckwith's posttrial motions were denied, he appealed to this Court asserting that the jury was not properly instructed on the applicable standard of care in medical malpractice cases.

DISCUSSION
I. WAS THE JURY PROPERLY INSTRUCTED ON THE APPLICABLE STANDARD OF CARE?
¶ 3. In the only issue on appeal, Beckwith argues that the jury was not properly instructed on the applicable standard of care in medical malpractice actions. Specifically, Beckwith claims that instructions C-7 and D-4 were abstract and should not have been given to the jury. Beckwith states that instructions P-8 and P-15, both of which the trial court refused, should have been given instead. Our standard of review for jury instructions is as follows:
The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case. However, the trial judge may also properly refuse the instructions if he finds them to incorrectly state the law or to repeat a theory fairly covered in another instruction or to be without proper foundation in the evidence of the case.
Howell v. State, 860 So.2d 704, 761 (¶ 203) (Miss.2003). "If an instruction merely relates a principle of law without relating it to an issue in the case, it is an abstract instruction, and should not be given to the jury." McCarty v. Kellum, 667 So.2d 1277, 1288 (Miss.1995). However, granting an abstract instruction is not always reversible error unless the instruction confuses and misleads the jury. Freeze v. Taylor, 257 So.2d 509, 511 (Miss.1972). In T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 952 (Miss.1992), the supreme court found that an example of an abstract instruction included the definition of "air pollution" but failed to direct the jury to do anything.
¶ 4. Initially, Beckwith agreed to C-7 but withdrew consent a few hours before the trial court submitted the instructions to the jury. Instruction C-7 reads as follows:
In this case the plaintiff has charged Dr. Nikhil S. Shah with medical negligence. A physician, such as Dr. Shah, is required to provide his patients with that same degree of care, skill and diligence which would be provided by a minimally competent, reasonably prudent physician in the same general field of practice, under the same or similar *555 circumstances, and who has available to him the same general facilities, resources and options. Therefore, medical negligence or "malpractice" is defined as a physician's failure to provide a patient with that degree of care, skill and diligence which would be provided by a minimally competent, reasonably prudent physician in the same specialty when faced with the same or similar circumstances.
If you find from a preponderance of the evidence in this case that Dr. Nikhil S. Shah, in the care and treatment of Mrs. Beckwith, complied with the standards of care expected of a reasonably prudent, minimally competent physician under the circumstances, then you shall return your verdict for the defendant, Dr. Nikhil S. Shah.
If you find from a preponderance of the evidence in this case that Dr. Nikhil S. Shah, in the care and treatment of Mrs. Beckwith, failed to comply with the standards of care expected of a reasonably prudent, minimally competent physician under the circumstances, then you shall return your verdict for the Beckwith family.
Instruction D-4 reads as follows:
You are instructed that negligence on the part of a physician such as Dr. Shah may not be presumed to have occurred simply because Mrs. Beckwith died.
Physicians are not the guarantors or insurers of the success of the medical treatment which they provide to their patients, nor is a physician liable to a patient's family simply because a death has occurred. A physician may be held liable for medical negligence only when the treatment which he provides falls below the minimally acceptable level of care as defined in these instructions and when such results in an injury to a patient.
¶ 5. Beckwith argues that these instructions mirror the instructions which the supreme court in McCarty found to be abstract. The instructions are similar, but, in McCarty, the court found that, although inclined to find that the instructions in question were inadequate, the jury instructions when read as a whole adequately instructed the jury. McCarty, 667 So.2d at 1288. However, in McCarty v. Mladineo, 636 So.2d 377, 381 (Miss.1994), the supreme court suggested that lawyers use a jury instruction similar to C-7 when applicable. C-7 correctly states the proper standard of care and instructs the jury to return a verdict for Beckwith or Shah depending upon what the evidence showed. Although D-4 is more abstract than C-7, when read in toto with the other instructions, we find that the jury was provided with appropriate standards and facts.
¶ 6. In reviewing all of the jury instructions, we do not find that instructions C-7 and D-4 are confusing or misleading as to suggest that the jury misunderstood its role or the law. This issue is without merit.
¶ 7. Beckwith also argues that P-8 or P-15 should have been given instead of C-7 and D-4. P-8 was initially proffered but rejected by the trial court. P-15, which was a revamped version of P-8, was proffered a few hours before instructions were given to the jury. Instruction P-8 reads as follows:
The term "proximate cause" or "cause" of an injury or damage are those acts which occur in a natural and continuous sequence that produce injury or damage and, without which, the injury or damage would not have occurred.
If you find from a preponderance of the evidence in this case that Dr. Shah did, or failed to do, any one or more of the following acts, to-wit:

*556 (1) To recognize that Helen Beckwith had acute diverticulitis and did not perform a CAT scan on Helen Beckwith that would have probably disclosed that Helen Beckwith had acute diverticulitis and that the colonoscopy should not have been performed; or
(2) Dr. Shah made a hole in Helen Beckwith's colon and he should not have reinserted the colonoscope into Helen Beckwith's body; or
(3) When Helen Beckwith first got into distress, Dr. Shah should have inserted a needle into her stomach to relieve the air; or
(4) To order an X-ray that probably would have shown the free air in Helen Beckwith's body when she got into distress and before Dr. Sandefur arrived; or
(5) To timely call Dr. John Sandefur after Helen Beckwith's colon was perforated; or
(6) When Helen Beckwith's condition became life-threatening while she was under the exclusive care of Dr. Shah, he did not treat Helen Beckwith for such life-threatening condition, and that such acts by Dr. Shah caused Helen Beckwith's death, but another doctor with Dr. Shah's ability and equipment:
1. Would not have performed the colonoscopy; or
2. Would not have reinserted the colonoscope; or
3. Would have inserted a needle into her stomach to relieve the free air; or
4. Would have ordered an X-ray after Helen Beckwith got into distress and before Dr. Sandefur arrived; or
5. Would have treated Helen Beckwith for the life threatening conditions, and that such acts would probably have saved Helen Beckwith's life, then you should return a verdict for the Beckwith family against Dr. Shah.
Instruction P-15 reads as follows:
The term "proximate cause" or "cause" of an injury or damage are those acts which occur in a natural and continuous sequence that produce injury or damage and, without which, the injury or damage would not have occurred.
If you find from a preponderance of the evidence in this case that the Defendant Shah, at the time he saw and treated Helen Beckwith, a minimally competent physician in the same field of practice who had available the same general facilities, services, equipment and options as the Defendant had and that he did to or failed to do any one or more of the following acts to wit:
(1) Failed to diagnose or recognize that Helen Beckwith had acute diverticulitis and performed colonoscopy; or
(2) Pumped a massive amount of free air into Helen Beckwith's body; or
(3) After Dr. Shah punctured Helen Beckwith's colon he should not have reinserted the scope; or
(4) That Dr. Shah failed to properly and timely react after he punctured Helen Beckwith's colon; or
(5) Failed to timely order an X-ray which would have shown free air in Helen Beckwith's body; or
(6) Failed to timely call a surgeon after Helen Beckwith's colon was perforated; or
(7) When Helen Beckwith's condition became life-threatening while she was under the exclusive care of Dr. Shah, he did not treat Helen Beckwith for such life-threatening condition; and that such acts by Dr. Shah proximately caused and/or contributed to Helen Beckwith's death, then you should return a verdict *557 for the Beckwith family against Defendant Shah.
¶ 8. Both instructions were confusing and peremptory in nature and the trial court found P-15 to be an improper statement of the law. We find no error by the trial court in denying the instructions.
¶ 9. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS, P.J., IRVING, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES AND ROBERTS, JJ. KING, C.J., NOT PARTICIPATING.
CHANDLER, J., Dissenting.
¶ 10. I respectfully dissent. In my opinion, the trial court erred by granting jury instructions C-7 and D-4 because they were abstract instructions on medical negligence and were the sole negligence instructions given. Therefore, I believe it is necessary for this Court to reverse and remand this case for a new trial in which the jury would be properly instructed.
¶ 11. I begin by pointing out that Beckwith successfully preserved appellate review of the trial court's grant of instructions C-7 and D-4 and refusal of instructions P-8 and P-15. The defense rested its case before the noon recess on April 20, 2001. The trial court held a jury instruction conference after the noon recess. At the conference, Beckwith proffered jury instruction P-8. That instruction stated:
The term "proximate cause" or "cause" of an injury or damage are those acts which occur in a natural and continuous sequence that produce injury or damage and, without which, the injury or damage would not have occurred. If you find from a preponderance of the evidence in this case that Dr. Shah did, or failed to do, any one or more of the following acts, to-wit:
(1) To recognize that Helen Beckwith had acute diverticulitis and did not perform a CAT scan on Helen Beckwith that would probably have disclosed that Helen Beckwith had acute diverticulitis and that the colonoscopy should not have been performed; or
(2) Dr. Shah made a hole in Helen Beckwith's colon and he should not have reinserted the colonoscope into Helen Beckwith's body; or
(3) When Helen Beckwith first got into distress, Dr. Shah should have inserted a needle into her stomach to relieve the air; or
(4) To order an X-ray that probably would have shown free air in Helen Beckwith's body when she got into distress and before Dr. Sandefur arrived; or
(5) To timely call Dr. John Sandefur after Helen Beckwith's colon was perforated; or
(6) When Helen Beckwith's condition became life-threatening while she was under the exclusive care of Dr. Shah, he did not treat Helen Beckwith for such life-threatening condition, and that such acts by Dr. Shah caused Helen Beckwith's death, but another doctor with Dr. Shah's ability and equipment:
1. Would not have performed the colonoscopy; or
2. Would have inserted a needle into her stomach to relieve the free air; or
3. Would have ordered an X-ray after Helen Beckwith got into distress and before Dr. Sandefur arrived; or
4. Would have treated Helen Beckwith for the life threatening conditions, and that such acts would probably have *558 saved Helen Beckwith's life, then you should return a verdict for the Beckwith family against Dr. Shah.
¶ 12. Beckwith argued that P-8 was a correct instruction because it articulated each act done or not done by Dr. Shah upon which Beckwith claimed liability. Beckwith admitted that the instruction might need rewording. The trial court refused P-8 because it invaded the jury's duty to make the factual determination of whether or not Helen suffered from acute diverticulitis.
¶ 13. Next, the court considered Dr. Shah's instruction D-5. Beckwith's counsel stated he would accept D-5 provided it was given as the court's instruction and that certain language was added. The court granted C-7 with Beckwith's suggested language comprising the last paragraph. As given, C-7 read:
In this case the plaintiff has charged Dr. Nikhil S. Shah with medical negligence. A physician, such as Dr. Shah, is required to provide his patients with that same degree of care, skill and diligence which would be provided by a minimally competent, reasonably prudent physician in the same general field of practice, under the same or similar circumstances, and who has available to him the same general facilities, resources, and options. Therefore, medical negligence or "malpractice" is defined as a physician's failure to provide a patient with that degree of care, skill and diligence which would be provided by a minimally competent, reasonably prudent physician in the same specialty when faced with the same or similar circumstances.
If you find from a preponderance of the evidence in this case that Dr. Nikhil S. Shah, in the care and treatment of Mrs. Beckwith, complied with the standards of care expected of a reasonably prudent, minimally competent physician under the circumstances, then you shall return your verdict for the defendant, Dr. Nikhil S. Shah.
If you find from a preponderance of the evidence in this case that Dr. Nikhil S. Shah, in the care and treatment of Mrs. Beckwith, failed to comply with the standards of care expected of a reasonably prudent, minimally competent physician under the circumstances, then you shall return your verdict for the Beckwith family.
¶ 14. The court next turned to Dr. Shah's proffered instruction D-4. Beckwith objected to D-4 on the ground that it was abstract and did not relate to the facts of the case. The court granted a modified version of D-4, which read:
You are instructed that negligence on the part of a physician such as Dr. Shah may not be presumed to have occurred simply because Mrs. Beckwith died.
Physicians are not the guarantors or insurers of the success of the medical treatment which they provide to their patients, nor is a physician liable to a patient's family simply because a death has occurred. A physician may be held liable for medical negligence only when the treatment which he provides falls below the minimally acceptable level of care as defined in these instructions and when such results in injury to a patient.
¶ 15. At the conclusion of the charge conference, the court recessed for the day. When the court reconvened the next day, Beckwith immediately withdrew his consent to instruction C-7. Beckwith argued that granting C-7 would amount to reversible error because C-7 was an improper abstract instruction on medical negligence. Beckwith proffered instruction P-15 as a substitute negligence instruction that purported to apply medical negligence law to *559 the specific facts of the case. P-15 was a redrawn version of P-8, and stated:
The term "proximate cause" or "cause" of an injury or damage are those acts which occur in a natural and continuous sequence that produce injury or damage and, without which, the injury or damage would not have occurred.
If you find from a preponderance of the evidence in this case that Defendant Shah, at the time he saw and treated Helen Beckwith, a minimally competent physician in the same field of practice who had available the same general facilities, services, equipment and options as the Defendant had and that he did or failed to do any one or more of the following acts to wit:
(1) Failed to diagnose or recognize that Helen Beckwith had acute diverticulitis and performed colonoscopy; or
(2) Pumped a massive amount of free air into Helen Beckwith's body; or
(3) After Dr. Shah punctured Helen Beckwith's colon he should not have reinserted the scope; or
(4) That Dr. Shah failed to properly and timely react after he punctured Helen Beckwith's colon; or
(5) Failed to timely order an X-ray which would have shown free air in Helen Beckwith's body; or
(6) Failed to timely call a surgeon after Helen Beckwith's colon was perforated; or
(7) When Helen Beckwith's condition became life-threatening while she was under the exclusive care of Dr. Shah, he did not treat Helen Beckwith for such life-threatening condition;
and that such acts by Dr. Shah proximately caused and/or contributed to Helen Beckwith's death, then you should return a verdict for the Beckwith family against Defendant Shah.
Dr. Shah objected to P-15 as being peremptory in nature. The court refused to substitute P-15 for C-7, stating that, while an instruction more specific than C-7 could be given, P-15 was an improper statement of the law and invaded the province of the jury in some respects.
¶ 16. The timing of Beckwith's filing of his jury instructions raises a question about the propriety of the trial court's consideration of those instructions. Beckwith filed a set of jury instructions before the commencement of the trial, but after the close of evidence he withdrew those instructions and filed a new set including instruction P-8. He filed instruction P-15 a day later on April 21, 2001. According to Mississippi Rule of Civil Procedure 51(b)(1), jury instructions must be delivered to the court and counsel for all parties not later than twenty-four hours before the time the action is scheduled to be tried. See also URCCC 3.07 (jury instructions must be pre-filed at least twenty-four hours prior to trial). However, it is within the trial court's discretion to allow jury instructions to be offered or amended after the trial has begun. Caskey v. Treadwell, 299 So.2d 691, 693 (Miss.1974) (stating that "[i]n some cases the content of an instruction cannot be determined until all the proof has been offered" and that "the trial judges necessarily have discretion in allowing instructions to be requested or amended after the evidence is in."). Thus, as is routinely done in the circuit courts of this state, the trial court exercised its discretion to consider Beckwith's jury instructions filed after the commencement of the trial. It was well within the trial court's discretion to consider Beckwith's untimely filed jury instructions. And, by requesting instructions P-8 and P-15 and specifically objecting to instructions C-7 and D-4, Beckwith preserved appellate review of the trial court's rulings on those instructions. Nichols v. Tubb, 609 So.2d 377, 388 *560 (Miss.1992); Young v. Robinson, 538 So.2d 781, 783 (Miss.1989).
¶ 17. I proceed to the merits of Beckwith's arguments. The jury must be instructed on all material issues presented by the evidence. Eckman v. Moore, 876 So.2d 975, 982(¶ 19) (Miss.2004). The trial court enjoys considerable discretion regarding the form and substance of the jury instructions. Splain v. Hines, 609 So.2d 1234, 1239 (Miss.1992). On review of the trial court's grant or refusal of jury instructions, this Court reads the jury instructions as a whole to determine if the jury was properly instructed. Id.
Our overarching concern is that the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it. [citation omitted]. We read the jury instructions as a whole, our focus upon what the jury heard and not on what was kept from it. We see how full the glass, not how empty. Defects or inadequacies in particular instructions do not trouble us, so long as the aggregate of the instructions, taken as a whole, fairly, though not necessarily perfectly, express the applicable primary rules of law.
Id. We will reverse only if the instructions, read in their entirety, failed to fairly and adequately instruct the jury. Starcher v. Byrne, 687 So.2d 737, 743 (Miss.1997).
¶ 18. Beckwith argues that the trial court erred by granting jury instruction C-7. He avers that, though C-7 correctly stated the law, C-7 was impermissibly abstract because it did not relate to the facts of the case. Beckwith further argues that none of the other instructions provided the jury with sufficient facts to properly decide the case.
¶ 19. In Freeze v. Taylor, 257 So.2d 509, 511 (Miss.1972), the court stated that abstract instructions on legal principles unrelated to the facts and issues are dangerous because of their tendency to confuse and mislead the jury. The Freeze court set out a test for determining whether a jury instruction is abstract:
The test to determine whether or not an instruction is abstract is to determine whether or not the instruction relates to facts shown by the evidence on the issues involved in the case. If an instruction merely relates a principle of law without relating it to an issue in the case, it is an abstract instruction and should not be given by the Court.
Id. However, the court stated, an abstract instruction will not be grounds for reversal unless it tends to confuse or mislead the jury. Id.
¶ 20. The issue of abstract jury instructions has frequently arisen in appeals from the grant or denial of jury instructions on negligence. See, e.g., McWilliams v. City of Pascagoula, 657 So.2d 1110, 1111-12 (Miss.1995); Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1159 (Miss.1992); Vines v. Windham, 606 So.2d 128, 133 (Miss.1992); Rucker v. Hopkins, 499 So.2d 766, 773 (Miss.1986). The supreme court has stated that "it is elementary that an instruction allowing the jury to find negligence must do so other than in the abstract." Lloyd Wood Const. Co. v. Little, 623 So.2d 968, 971 (Miss.1993). "[A] charge of negligence must be grounded in an allegation of specific conduct, acts or failures to act, which may be deemed inconsistent with reasonable prudence under the circumstances." Id. Thus a jury instruction on negligence, in addition to instructing the jury that it must find for the plaintiff if it finds the defendant was negligent and the negligence was the proximate cause of the injury, must also relate the acts of the defendant alleged to be negligent. Id. at 972 (citing Mills v. Balius, 254 Miss. 353, 360-61, 180 So.2d 914, 916-17 (1965)). For example, in Mills, the court condemned as *561 abstract a jury instruction stating that "if you find from a preponderance of the evidence that the Defendant, Edward Mills, was negligent and that his negligence was the proximate cause of the accident, then you should award to the Plaintiff the following [damages]." Mills, 254 Miss. at 359, 180 So.2d at 915-16. The court held that the instruction was erroneous because it failed to designate what acts by Mills constituted negligence under the circumstances. Id. at 361, 917.
¶ 21. A reason that a negligence instruction must be grounded in specific conduct is "that jurors must not be left to guess or speculate as to which of the defendant's acts or omissions might have been negligent." Williams, 657 So.2d at 1111. There is a danger that, without such instruction, the jury might grasp any act which it felt constituted a lack of reasonable care and adjudge the defendant guilty of negligence. Id. at 1112. To avoid this danger, the court has held that the jury must be instructed as to the ground or grounds of negligence alleged and which are supported by substantial proof. Id. Of course, because this Court reviews the jury instructions as a whole, an abstract negligence instruction will not be reversible error if the instructions in their entirety adequately establish the facts upon which the jury may find negligence. Flight Line, 608 So.2d at 1159. Accordingly, in Flight Line, while one instruction provided a boilerplate definition of negligence, the court concluded that the jury instructions, read as a whole, adequately instructed the jury on the facts undergirding the negligence claim and did not leave the jury with "a free floating definition of negligence." Id.
¶ 22. The rule that, to avoid abstraction, a negligence instruction must specify the manner in which the defendant was negligent has been applied in the medical malpractice arena. McCarty v. Kellum, 667 So.2d 1277, 1287-88 (Miss.1995). In Kellum, the plaintiff-appellants argued that two jury instructions were impermissibly vague and abstract because they did not relate to the facts as shown by the evidence relating to the standard of care issue in the case. Id. at 1287. The two instructions stated:
The court instructs the jury that the word "negligence" as used in these instructions means the doing of some act which a minimally competent obstetrician treating a patient would not have done under the same or similar circumstances or the failure to do some act which a minimally competent obstetrician would have done under the same or similar circumstances. Therefore, if you believe that, during his care and treatment of Mrs. McCarty and the delivery of her baby, Dr. Kellum acted as a minimally competent obstetrician would have acted when faced with the same or similar circumstances, it is your duty to return a verdict for the defendants. . . .
The court instructs the jury that physicians and surgeons are not guarantors of the success of any medical treatment provided to a patient. Likewise, a physician is not automatically liable for the occurrence of an undesirable result. A doctor is only required to provide a patient with that degree of care, skill, and diligence that would be practiced in the same or similar circumstances by a minimally competent physician in the same area of medicine. Therefore, if you find from a preponderance of the evidence that, during his care, treatment, and delivery of Lucas McCarty, Dr. Kellum provided him with that degree of care, skill and diligence which would have been provided by a minimally competent obstetrician, then you must return a verdict for [the defendants].
*562 Id. The appellants argued that the instructions failed to provide the jury with any guidance in resolving the ultimate issue of how Dr. Kellum deviated from the standard of care. Id.
¶ 23. Applying the Freeze test, the court held that, while the instructions correctly stated the law, they were not made applicable to the facts of the case and were abstract. Id. at 1288. "Mere definition of the standard of care does not direct the jury to do anything." Id. (citing T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 954 (Miss.1992)). The court stated that "the use of an abstract instruction without application of the specific facts of the case under consideration invites reversible error." Id. (citing Harkins v. Paschall, 348 So.2d 1019, 1023 (Miss.1977)). The court opined that the instructions, considered alone, were inadequate. Id. However, the court found no reversible error because other jury instructions were given that adequately set out "specific facts and appropriate standards." Id.
¶ 24. As argued by Beckwith, instructions C-7 and D-4 were substantially similar to the two instructions found to be abstract and inadequate in Kellum. The majority recognizes this argument, but finds no reversible error because "the instructions read as a whole adequately instructed the jury." But critically, unlike in Kellum, in this case there were no other jury instructions given on negligence that would enable this Court to read the instructions as a whole and find that the jury was correctly instructed. While the grant of C-7 would not be reversible error had other instructions been given that provided the jury "with appropriate facts and specific standards," in this case no other jury instructions on negligence were given.
¶ 25. Moreover, I must respectfully disagree with the majority's reliance on McCarty v. Mladineo, 636 So.2d 377, 381 (Miss.1994) as authority for affirming this case. The supreme court did approve a jury instruction on medical negligence in Mladineo.[1] But the purpose of the court's approval of the instruction was to provide the bench and bar with a correct statement of the standard of care. The court did not address the issue of vagueness as it was not a matter before the court. And, Mladineo was decided over one year before Kellum, making Kellum not only the on-point precedent but also the more recent precedent on medical negligence jury instructions. I would find Kellum, not Mladineo, to be the controlling precedent. Pursuant to Kellum and the other aforementioned case law on negligence instructions, I would find that the grant of instructions C-7 and D-4 as the sole negligence instructions in this case constituted reversible error.
¶ 26. I also observe that, though Beckwith did not specifically object on this ground, instruction C-7 was an insufficient statement of the law. To prove a medical malpractice claim, a plaintiff must show: (1) the existence of a duty on the part of the physician to conform to a specific standard of conduct; (2) the specific standard of conduct; (3) that the physician's breach of the duty was the proximate cause of the *563 plaintiff's injury, and (4) that damages resulted. Barner v. Gorman, 605 So.2d 805, 808-09 (Miss.1992). In a medical malpractice case, it is essential that the jurors be instructed as to the duty owed by the physician to the plaintiff and that they must believe by a preponderance of the evidence that the defendant violated said duty by negligently doing, or failing to do, certain acts which proximately caused or contributed to the plaintiff's injuries. Trapp v. Cayson, 471 So.2d 375, 383 (Miss. 1985).
¶ 27. Instruction C-7 properly instructed the jury on Dr. Shah's duty of care. And, it correctly stated that the jury should find for Dr. Shah if it concluded Dr. Shah complied with the standard of care in his care and treatment of Helen Beckwith. However, instruction C-7 did not set out each and every element the jury had to find in order to reach a verdict for Beckwith. Instruction C-7 provided that the jury could return a verdict for Beckwith upon a finding that Dr. Shah breached the standard of care. Plainly, instruction C-7 did not charge the jury that to find for Beckwith it must also conclude that the breach proximately caused or contributed to Helen Beckwith's injuries. Therefore, in addition to being abstract, instruction C-7 was an inadequate statement of the law that was uncorrected by any other jury instruction.
¶ 28. Finally, I briefly address the trial court's refusal of Beckwith's instruction P-15. The trial court found that some statements in P-15 were peremptory and invaded the jury's role as the fact-finder. For example, P-15 stated that the jury could return a verdict for Beckwith if it found that Dr. Shah "failed to diagnose or recognize that Helen Beckwith had acute diverticulitis and performed colonoscopy" and that this failure proximately caused or contributed to Helen Beckwith's death. The court found the instruction assumed as fact that Helen Beckwith suffered from acute diverticulitis, when at trial the question of whether she suffered from acute diverticulitis was a disputed fact. The court also stated that P-15 was an improper statement of the law.
¶ 29. The proffer of P-15 was an attempt by to have the jury instructed on the elements of medical negligence applied to the specific facts of the case and to cure the reversible error created by the grant of C-7 and D-4 alone. The supreme court has stated:
[W]here under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction.
McKee v. State, 791 So.2d 804, 809(¶ 18) (Miss.2001) (quoting Harper v. State, 478 So.2d 1017, 1018 (Miss.1985)). This rule has been applied in civil actions. Byrd v. McGill, 478 So.2d 302, 305 (Miss.1985). After identifying inaccuracies in P-15, the trial court did not reform and correct P-15 or give Beckwith the opportunity to correct P-15 so that the jury could be given a proper instruction on negligence. This failure on behalf of the trial court resulted in the submission of the case to the jury upon inadequate instructions.
¶ 30. The jury instructions given in this case, considered as a whole, were abstract and did not inform the jurors of the specific acts or omissions by Dr. Shah which they could find to have breached the standard *564 of care. For that reason, I would reverse and remand for a new trial.
BARNES AND ROBERTS, JJ., JOIN THIS OPINION.
NOTES
[1] The instruction provided:

The court instructs the jury that if you find from a preponderance of the credible evidence in this case that during his care and treatment of Mrs. Plaintiff, Dr. Defendant has failed to provide her with that degree of care, skill, and diligence which would have been provided by a reasonably prudent, minimally competent physician administering mini-dose heparin therapy when faced with same or similar circumstances, and that such failure was the sole proximate cause or proximate contributing cause of Plaintiff's injuries, if any, then you shall return a verdict for the Plaintiffs.